Bouton *v.* The City of Brooklyn.

———— • •————

BOUTON *vs.* THE CITY OF BROOKLYN and BRIANT.

In what cases, and for what reasons, the practice of the equity courts permits a plaintiff to commence an action in his own behalf as well as in itself of all other persons interested in the same question.

The rule which permits the omission of parties interested in the question litigated, and the filing of a bill by one, in behalf of all others interested, is adopted from necessity, to prevent a failure of justice.

An action brought by a party suing in his own behalf as well as in behalf of other persons interested, not for the purpose of asserting a common right, nor to procure an account and distribution of a common fund, nor to restrain the commission of an act injurious to property or rights in which the plaintiff and those in whose behalf he sues have a common interest, but to avoid an assessment made by a municipal corporation upon the separate lots of the plaintiff and such other persons, for grading a park, and to restrain the collector from collecting the same, cannot be maintained.

Such an action will not be entertained on the ground that it is brought to prevent a multiplicity of suits; nor on the ground that its object is to remove the cloud upon the title to the lands, created by the lien of the assessment.

APPEAL by the plaintiff, from a judgment entered at a special term of the court. The complaint was filed by Bouton, a resident of the city of Brooklyn, in behalf of himself, and in behalf and for the benefit of all others interested in the matter of Washington park grading, a proceeding instituted by the defendants, the City of Brooklyn, against the plaintiff and other persons, who were the owners of certain lands and premises in the city of Brooklyn. The plaintiff stated that by an act of the legislature passed the 23d day of April, 1835, a public square

or park was laid out in what was then called the seventh ward of the city of Brooklyn; that subsequently, by an act of the legislature, passed April 25th, 1845, the location of the said Washington park was changed to what is now called the eleventh ward in said city; and in and by said acts, the property taken for the said park was declared to be a public park; and the said Washington park was subsequently opened as a public park, pursuant to several acts of the said legislature, passed the 24th day of March, 1848. The city of Brooklyn was authorized to create a loan for the payment of the amount necessary to be paid for the land and other matters connected with the said park, and the faith, property and effects of the said city of Brooklyn were pledged, in and by said acts, for the payment of said loan; that the city of Brooklyn, as such corporation, took the title and possession of said park; that some years after the said corporation had been seised of the title and became in the possession of the said park, they undertook and did enter into contracts for the regulating and improving said park, and did enter into contracts for the regulating and improving of said park to the amount of upwards of $34,000; and thereafter, without any color, license or authority by law, proceeded to take proceedings for the purpose of assessing the said amount as a local assessment upon the several lots, pieces or parcels of land benefited thereby, in proportion to the benefit which, in the opinion of the street commissioner of the city of Brooklyn, the same should derive from, or in justice ought to be assessed for, the same; and thereafter caused a notice to be published, stating that the assessment for the grading of the park had been confirmed, and that all parties interested might pay their assessments, at the office of the collector of taxes, within thirty days, without any additional charge; after which time the assessments, with the legal charges added, would be collected by the collector. The plaintiff further stated, that in pursuance of the proceedings had by the city of Brooklyn as aforesaid, he, together with other persons in whose behalf, and for whose benefit, as well as for himself, this action was commenced, had been assessed the said sum of $34,000 and upwards, for the regulating and improvement of

the said park; and the plaintiff averred that the defendants, the City of Brooklyn, had no right whatever, under any law of this state, to impose the said assessment upon the plaintiff's property, and the property of said other persons, for the said grading and improving of Washington park; that the said defendants had, without any warrant or authority, assessed the plaintiff and the said other persons, and had made the same a local assessment, whereas, by the law of the land, the said park was declared to be a public park, and the expense of grading and improving the same should be a charge upon the whole city, and not upon any local district in said city. And the said plaintiff further stated, that he had been informed and believed, that the said alleged assessment had been made by the street commissioner of the city of Brooklyn, and had not been made by any commissioner or commissioners appointed by the county judge or a justice of the supreme court, and that the said alleged assessment was in other respects irregular, illegal and void. And the plaintiff further stated, that he had been informed and believed, and so charged, that about three hundred different persons had been assessed for the expenses of grading and improving said Washington park, in and by the said alleged assessment, and that the said assessment had been confirmed by the common council of the city of Brooklyn. The plaintiff further stated, that the city of Brooklyn had assessed him for Washington ark grading the sum of $930 or thereabouts, and had caused a warrant to be signed and delivered to I. P. S. Briant, collector of taxes and assessments of the city of Brooklyn; that the said collector, either in person or by his deputies, had levied upon, or threatened to levy under said warrant, upon the property of the persons so assessed under said proceedings. The plaintiff further stated, that the said alleged assessment was claimed by the defendants to be a lien and incumbrance upon the plaintiff's property, and upon the property of other persons included in the district of assessment for the said Washington park grading, and that as he had been advised and believed, many of the facts showing the irregularities in said proceedings to impose said alleged assessment, and the invalidity thereof, would not appear

upon the face of the papers or proceedings necessary to establish such lien, and could only be shown by testimony outside and extrinsic of said papers and proceedings; that he and the other persons for whose benefit this action was commenced were desirous of having said alleged assessment declared void, and no lien upon said lands and premises, and the cloud which had been thus created upon their said land and premises thus removed, and that no right could accrue to the said collector to collect the said alleged assessments under said warrant. And the plaintiff stated that the city of Brooklyn would not be liable to refund to him or the said other persons any amount they might be compelled to pay said collector, by reason of the city of Brooklyn having no authority to make said assessment; that the said collector was personally irresponsible to refund and pay to the plaintiff or the said other persons the amount they might be compelled to pay him under a levy and sale made by him under said warrant, the said city of Brooklyn not being responsible as a corporation for any act done by them which is not authorized by their charter or act of incorporation. And the plaintiff further stated, that unless the city of Brooklyn and the said Briant were, by an injunction order, restrained and enjoined from proceeding any further to collect the said amount assessed against him and against the said other persons, great and irreparable injury would accrue to him and them, and the collection of said alleged assessments, or the attempt to collect the same, would lead to and cause a great multiplicity of suits. And the plaintiff demanded the following relief: That an injunction order issue enjoining and restraining the city of Brooklyn from taking any further proceedings in the matter of collecting the said alleged assessment for Washington park grading; and also that said Briant be in like manner restrained and enjoined from proceeding under the warrant directed to him as collector of taxes and assessments in the city of Brooklyn, in the matter of Washington park grading, until the further order of the court; and the plaintiff demanded the following relief and judgment: That all the proceedings of the city of Brooklyn in relation to the assessment for Washington park grading might be declared

Bouton *v.* The City of Brooklyn.

null and void, and no lien or incumbrance upon any property as- sessed therefor, and that no rights accrued to the city of Brook- lyn to enforce the payment of the assessment, and that the said collector be perpetually enjoined from proceeding under said warrant; that the city of Brooklyn pay the costs of the plaintiff in this action, and such damages as he and the said other per- sons for whose benefit this action was brought had sustained.

The defendants demurred to the complaint; and specified and assigned the following causes of demurrer, viz. : that the com- plaint did not state facts which constituted a case for the equitable relief specifically sought, or for any other relief whatever in equity, or for damages in a court of law; that the facts stated did not show the proceedings of the defendants to have been either void or irregular; that the facts stated did not show a cloud upon the plaintiff's title, or any other grievance or injury suffered or apprehended, which was the subject of legal or equi- table cognizance; and that said complaint, in the above and other particulars, did not state facts sufficient to constitute a cause of action against the defendants jointly or severally.

The plaintiff joined in demurrer. The demurrer was brought to argument at a special term of the court, held by Justice S. B. Strong, who delivered the following opinion.

" S. B. STRONG, J. The assessment of which the plaintiff complains was made by the street commissioner of the city of Brooklyn for grading Washington park. The plaintiff alleges that the charter of that city did not authorize such assessment, and asks that this court shall declare it to be null and void, and not a lien or incumbrance upon the property assessed; that the defendant, Briant, who is the collector of the taxes and assess- ments of the city, may be perpetually enjoined from proceeding under the warrant to him to collect the amount of the assailed assessment, and that the city of Brooklyn may be required to pay the damages sustained by the plaintiff by reason of such unauthorized proceedings.

The first, and as I view the case, the most material question involved in this controversy, is whether the assessment was

warranted by the statute. That the legislature has the power to provide for making and enforcing local assessments for local improvements has been decided, and in my opinion correctly decided, by the court of appeals.

Several acts have been passed relative to Washington park. They all speak of it as a public improvement, and as public property. The corporation, therefore, holds it as trustees for a designated purpose, and have not the absolute and unqualified title to it, to dispose of it as they may think proper for general objects. It therefore comes within the range of subjects deemed by the legislature proper for local taxation, and the assessment for the expenses of its improvement is not brought within the objection of taxing the property of one for the benefit of another, which, if well founded, would be fatal to its validity.

The act of April 27th, 1847, relative to Washington park, (§ 8,) authorized the corporation of Brooklyn to make any improvement on the park or square in connection with it, which they might deem proper. The act of March 24th, 1848, relative to the same park, provided for the payment of the expenses caused by any proceedings then had under the act of 1847, but has no reference to any future improvements. When the act of April 4th, 1850, to revise and amend the several acts relating to the city of Brooklyn, and which constitutes its existing charter, was passed, there was no statute providing specially and separately for paying for future improvements to Washington park. The provisions of that act extended to that park, as they purported to relate to all such establishments in the city, and they conferred all the power, possessed by the corporation or any of its officers, to make improvements upon it, and to provide for their payment. The first section of title 4, of that act, authorizes the common council to cause streets and avenues to be opened and widened, and to be regulated and paved, and to cause public squares and parks to be opened, regulated, ornamented and protected, and streets and avenues to be kept in repair, and from time to time to be repaved, or regraded and repaired; to close up and discontinue roads, streets, lanes and avenues; to provide that lamps and lamp-posts be erected, and cisterns made

Bouton *v.* The City of Brooklyn.

for the purpose of furnishing water in case of fire; to cause sewers and drains, wells and pumps, to be constructed and repaired, and generally to make such *other improvements* in and about such streets, avenues and squares, as the public convenience may require; and it provides that the expenses of all such improvements, except for repairs, shall be assessed, and be a lien upon the property benefited thereby, in proportion to the amount of such benefit. The third section of the same title provides that the expenses for opening or widening streets, roads, avenues, parks, or squares, shall be estimated and assessed by three commissioners, to be appointed by the county court or supreme court. The 22d and 23d sections of the same title provide that the expenses of regulating, grading and paving, and of regrading and repaving streets, and of constructing sewers and drains, shall be apportioned and assessed by one or more commissioners, to be appointed in like manner. By the 30th section of the same title, the expenses of constructing wells and pumps, public cisterns, lamp-posts and lamps, flagging side-walks, of fencing and filling-in lots, *and all other improvements of a like nature not before specified,* are to be assessed by the street commissioner of the city. The authority to make the assessment in question is claimed under this 30th section.

It was admitted on the argument, by the counsel for the plaintiff, that the power to *grade* this park was conferred upon the corporation by the first section of the fourth title of the act which I have quoted. If so, that section also directs that the expenses of such improvement shall be assessed, and be a lien on the property benefited thereby, in proportion to the amount of the benefit conferred. This, then, grants to the corporation the power, and imposes upon them the duty of making an assessment to pay for such expenses. The question very naturally suggests itself, whether the legislature would have conferred such power and imposed such duty without at the same time providing the requisite means for performing the power and discharging the duty. That is not to be presumed. The inference is altogether the other way. Judge Jewett remarks, in *Stief* v. *Heart,* (1 *Comst.* 30,) that when a power is

given by the statute, every thing necessary to making it effect-ual, or requisite to obtaining the end, is implied. Probably the remark is too general. Where ordinary common law incidents are necessary to render a power effectual, they may undoubt-edly be inferred, although not mentioned in the statute; but when such incidents do not go far enough, and no statutory means are provided to carry the power into effect, it must fail. Where, however, there are provisions in the statute, probably designed to give effect to the power, but couched in such general terms that the design cannot be inferred with cer-tainty, they should receive a liberal construction towards ef-fectuating the power. That is emphatically true, where (as in this case) the statute is remedial and not penal. Accordingly, Chancellor Kent says (1 *Com.* 465,) such statutes are to receive an equitable interpretation by which the letter of the act is sometimes restrained *and sometimes enlarged,* so as to meet the beneficial end in view, and prevent a failure of the remedy. The same accomplished judge and elegant writer says, (1 *Com.* 461, 2,) It is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and of any part of a statute taken and compared together. (1 *Co. Lit.* 301 *a.*) The real intention, when accu-rately ascertained, will always prevail over the literal sense of terms. *Scire leges, non hoc est verba earum tenere, sed vim ac potestatem,* and the reason and intention of the lawgiver will control the strict letter of the law when the letter would lead to palpable injustice, contradiction and absurdity. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the necessity felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good sense. The 30th section of the 4th title of the act which I have quoted, authorizes the street commissioner to assess (as he has done in the instance under consideration) the expenses of constructing wells and pumps, public cisterns, lamp-posts and lamps, flagging side-walks, of fencing or filling in lots, and all other improvements of a *like nature,* not before specified; and

Bouton v. The City of Brooklyn.

the question is, whether grading a park is such improvement? Clearly it is an improvement, and as clearly it had not been before specified in the statute. It had been included in general terms. Was it, then, "like" the other improvements specified in the same section? It could not have been designed that it should resemble each of them in every respect, for in some particulars such specified improvements differ materially from each other. There is not much resemblance between constructing a lamp-post and filling in lots. The statute probably had reference to some classification made by its own provisions rather than to any designation by "nature," according to the more usual interpretation of that word. There is very little natural similitude between the subjects specified in the 30th section; but the statute places them in the same class with each other, and in some important particulars, with the improvement in question. They are alike local in their benefits, and equally call for local assessments to pay for them; at least, such was the opinion of the legislature, as they were all included in the same category in the first section of the title. They are all, too, improvements upon property already belonging to the public, and do not require the assumption of private property for public purposes. In this particular they differ from the improvements specified in the third section, where the assessments are to be made by three commissioners appointed by a court, and are not subjected to the "one man power." The number of the commissioners and the manner of their appointment when private property is taken for the use of the public, and the damages sustained by the owners are to be estimated and determined, are directed by the constitution, and it was in obedience to the constitutional provision, as well as in reference to the importance of the duties to be discharged, that the legislature guarded these public works more cautiously than the others specified in the statute. It does not very clearly appear that the legislature in classifying the improvements had reference to the greater or less expenditure which they might create. Public works of the same nature may vary from each other most essentially in their costliness. The expense of grading a park

depends upon its size, and the unevenness of the surface. If it should be of small extent and the ground should be even and correspond with the level of the surrounding streets, the expense of grading it would be inconsiderable, much less than that caused by filling in lots, to which, in many particulars, it has a strong resemblance. Neither is it probable that the legislature had any special reference to the extent of the district to be affected by the improvement and assessed for its expense. Some of those enumerated in the last class, such as flagging side-walks and fencing and filling in lots, might extend over a large district, whilst constructing wells, pumps and cisterns, could benefit but comparatively a small number.

After all, however, the points of resemblance between the improvement in question and those particularly specified are not sufficiently numerous or strong to lead by their own weight to any certain conclusion.; but, taken in connection with the evident design of the legislature, that such improvement should be made and the consequent expenses paid through this species of local taxation, and the fact that no authority is given in any other part of the statute, or (so far as I know) anywhere else, to raise the requisite funds, they are sufficient to warrant the conclusion which I have adopted, that the assessment in question was authorized by the statute, and is consequently valid.

The other important question involved in this controversy is, whether if the assessment had been invalid the plaintiff would have been entitled to the relief demanded in his complaint. I shall consider this question, as the determination of it will be material, if the opinion which I have adopted upon the point which I have already discussed should be erroneous.

The relief demanded, except the compensation in damages, can be awarded by this court, if at all, only in the exercise of its equitable jurisdiction. Damages may be given as a part of a remedy strictly equitable, and when, as in this case, the principal relief demanded is of that class, the claim for such damages partakes of the same character. Is it, then, competent for this court, under the additional powers recently conferred upon it, to award the desired relief? It has entire cognizance of

Bouton *v.* The City of Brooklyn.

cases both at law and in equity. The distinction between legal and equitable remedies has been abolished by the code. The power is identical, but the limits of either have not been extended. This court, in administering equity, is confined to the cases in which courts of equity had jurisdiction previous to the late change. If not, the question may well be asked, where will it stop?

Abstract ideas of equity are somewhat indefinite, and there could be no uniform rule governing the several branches, and numerous judges of this court. We have not yet necessarily arrived at that degree of uncertainty and consequent confusion, and I trust that we never shall. The most that can be effected by the change is, that when a plaintiff states a case which entitles him to some redress in the law, he shall not be turned out of court because he may be mistaken in the species of relief which he has demanded in his complaint. But he is still bound to state his case in such a manner as to enable the court to grant him some specific redress, according to old established principles. They have not been changed. Now, no court of law or equity could directly annul the proceedings of an inferior tribunal or of a municipal corporation, unless they were regularly brought before it upon a certiorari or some other appropriate process addressed to the subordinate court or body. Nor, could a court of law in any other way make any order, or render any judgment generally sustaining the action of such tribunal or body. That could be done only in a court of equity. This court has now the same powers; but neither those nor the class of cases over which they can be exercised, have been increased. Now, in this case, no process has been issued to the corporation to bring up specifically the proceedings complained of, nor are they here in such a manner as to enable this court to set them aside; but an appeal is made to the court in the exercise of its power in equity, to declare their nullity, and to prevent their operation. Can this appeal be successful, according to established rules which have heretofore prevailed in the court of chancery? The plaintiff claims the desired interposition of this court, because, first, he has no other remedy; secondly, the

Bouton *v.* The City of Brooklyn.

assessment casts a cloud upon his title to the land affected by the lien; and third, it will prevent a multiplicity of suits. These are all valid causes for relief, in proper cases. The question is, whether this is one of that class?

The plaintiff, and those who are associated with him in this suit, have another, and I think an adequate remedy for any wrong which they may have sustained by the assessment. If it was a judicial proceeding, it can be reviewed on certiorari, and set aside, if invalid from a want of jurisdiction. If, as is alleged, it is void for that cause, and the moneys should be collected and paid into the city treasury, they could be recovered by the payers, in an action against the corporation. True, it might be better in this case to prevent the wrong than to allow it to go on, and when perpetrated, redress it. But the law does not regard particular cases; it is necessarily applicable to the exigencies of classes rather than of individuals. As a general rule, it would be injudicious to interfere to prevent apprehended wrongs; and the law, therefore, limits such interference to cases where the complaining party would otherwise be without adequate redress.

If the assessment is void from a want of the requisite power to make it, it cannot constitute a lien upon the plaintiff's real estate. It might, nevertheless, be a cloud upon his title, were it not for the fact that the objection, if any, is apparent on the face of the proceedings. They show that the assessment was made by the street commissioner for grading a park, and if the statute gave no authority for the procedure, its nullity must be evident to any one examining the papers, as all are supposed to know the law. In such cases the court does not interpose to remove the cloud, because, if there be any, it is so thin that it can do no serious injury. Besides, it was decided by both the late court of chancery and the court for the correction of errors, that a court of equity will not, even for the purpose of removing an alleged cloud, review the proceedings of subordinate tribunals or municipal corporations. (*Mooers* v. *Smedley*, 6 *John. Ch. Rep.* 28. *Mayor, &c., of Brooklyn* v. *Meserole*, 26 *Wend.* 132.) If it was competent for this court under the existing

Bouton *v.* The City of Brooklyn.

system, to extend its jurisdiction in this particular to that class of cases, it would be highly inexpedient to do so, as it would constitute a source of excessive and unnecessary litigation

The remaining question is, whether, supposing the assessment to be invalid, the circumstances attending it present a proper case for the desired interposition of this court, to prevent a multiplicity of suits. The practice was originally introduced for the protection of any one who might be threatened with the attacks of numerous litigants, having, in common, claims against him, based upon the same facts and principles. In this case there has not been any such suit, nor is any threatened. The plaintiff apprehends that something may be done which will lead to a lawsuit, and probably to many. But that is not enough to justify the interposition of this court by way of prevention. That relief is not granted until the plaintiff has established his right by at least one successful suit at law. A bill of peace is sometimes entertained to settle the rights of several parties in a single suit brought under the direction of the court. But the plaintiff does not ask for that relief, nor could this court direct a suit to be brought, before any cause of action had actually accrued. The plaintiff does not ask this court to prevent, by judicial action, a multiplicity of suits, but to prevent the consummation of an act which might give rise to litigation. That is not done, except when the evil threatened would, if perpetrated, be irremediable; or, at any rate, be so extensive as to clearly take it out of the ordinary class of private wrongs. Neither is the case in the action before me.

Upon the whole, I am satisfied that the facts set forth in the complaint are not sufficient to entitle the plaintiff to the remedy which he demands. I rest my opinion, so far as it relates to the mode of procedure, upon the following principles : A court of law only provides a redress for a wrong actually sustained. A court of equity grants a preventive, within certain limits, which do not include the case presented by the plaintiff. A court in which the functions of both are joined, cannot extend its power beyond what was possessed by the one or the other previous to the junction of the two. And an assimilation of

remedies cannot extend the operation of either beyond the limits assigned to the most extensive, when each operated in its own separate sphere.

There must be judgment for the defendants on the demurrer, nd the complaint must be dismissed."

From this decision the plaintiff appealed to the general term.

*N. F. Waring,* for the appellant. The demurrer concedes, (1.) That about three hundred persons have been assessed for the improvement in question. (2.) That the defendants claim the assessment to be a lien and incumbrance upon the property assessed. (3.) That many of the facts necessary to show the invalidity of the assessment do not appear on the face of the proceedings or papers to establish such lien, and can only be shown by testimony outside, and extrinsic of such papers and proceedings. (4.) That the assessment will cause a great multiplicity of suits, and lead to irreparable injury.

I. The proceedings are void. The improvement in question is a public improvement. The park is the property of the city, and should be improved at the expense of the city at large. (*Laws of* 1847, *page* 139, § 8.) The lands taken for the park are vested in the city. (*Laws of* 1848, *p.* 200, § 2.) The lands were paid for by a city loan. (*City Charter, Laws of* 1850, *p.* 249, § 13, *sub.* 1.) Power is given to the common council to manage the property of the city. The street commissioner had no power to make the assessment in question. (*City Charter, tit.* 4, § 30, *Laws of* 1850, *p.* 273. *See* § 22, *p.* 271, *and tit.* 2, § 13, *sub.* 23, *p.* 251.)'

II. The proceedings are a cloud upon the title. (*City Charter, tit.* 5, §§ 23, *to* 27, *Laws of* 1850, *p.* 280, *&c. See* § 40, *p.* 285.)

III. The plaintiff is entitled to the relief demanded by the complaint. (1.) The code has abolished all distinctions between legal and equitable remedies. It is no longer an objection that the party has a remedy at law. (2.) The proceedings are void; and when void, the court may interfere by injunction. (*Patterson* v. *New-York,* 1 *Paige,* 114. *Champlin* v. *New-York,* 4 *Id.* 573.) And if they can entertain the case for the purpose

Bouton *v.* The City of Brooklyn.

of an injunction, may grant the relief. (3.) The court may in-terfere to remove a cloud upon the title; (*Pettit* v. *Shepherd,* 5 *Paige,* 493;) or to prevent a multiplicity of suits. (*Mohawk & H. R. R. Co.* v. *Artcher,* 6 *Paige,* 83.) (4.) The remedy in the nature of an action at law is incomplete; and the injury is irreparable. The cases of *Meserole* v. *Brooklyn,* (26 *Wend.* 132,) and *Van Doren* v. *New-York,* (9 *Paige,* 388,) which are relied upon by the defendants, expressly recognize the right of a court of equity to interfere and grant relief, when proceedings are void, but not on their face—to remove a cloud upon the title, to prevent multiplicity of suits, and when the injury is irrepar-able. (*See Lawrence* v. *New-York,* 2 *Barb. S. C. R.* 577.)

*J. M. Van Cott,* for the defendants. I. If the assessment in question is absolutely void upon its face, for want of authority to impose it, this court has not jurisdiction to review and set it aside, except on *certiorari.* 1. A common law *certiorari* is the appropriate remedy in such a case. In this action, the court cannot act directly upon the assessment, and either confirm or set it aside. (2.) The case is not within the equity jurisdiction of the court. The complaint is not in the nature of a bill of peace. Nor is this a case to prevent multiplicity of suits. (2 *Story's Eq.,* §§ 852, 360. *Town of Huntington* v. *Nicoll,* 3 *John.* 566. *Eldridge* v. *Hill,* 2 *John. Ch.* 281. *West* v. *Mayor of New-York,* 10 *Paige,* 539. *Oakley* v. *New-York, Id.* 540.) And equity will not interfere to set aside irregular or void taxes or assessments; 1. Because when patent they are not clouds upon title; 2. Because they are left to adequate and more ap-propriate remedies. (*Mooers* v. *Smedley,* 6 *John. Ch.* 28. *Meserole* v. *Brooklyn,* 26 *Wend.* 132. *Wiggin* v. *New-York,* 9 *Paige,* 16. *Van Doren* v. *New-York, Id.* 388. *Cox* v. *Clift,* 2 *Comst.* 124. *Livingston* v. *Hollenbeck,* 4 *Barb.* 16. *Fleetwood* v. *New-York,* 2 *Sand. S. C. R.* 475.) All the in-jury apprehended, is a single trespass, and for that the plaintiff has a complete remedy in damages. (4 *Bro. Parl. R.* 157. 6 *Id.* 575. 1 *Atk.* 284. 2 *Id.* 483, 484. 3 *Bro. Parl. Cases,* 39. 3 *Cranch,* 462, 468. *Neukum* v. *Graves,* 2 *Vernon,* 431.)

The union of law and equity jurisdiction, while it has partially blended old remedies, has not created new remedies unknown to either jurisdiction.

II. But the assessment is valid.    (1.) The corporation had authority to make the improvement, and to assess the expense on a local district.  (*Laws of* 1850,  264, *tit.* 1, § 1.  *Laws of* 1833, 505, § 16;  *of* 1835,  136, §§  2, 4 *and* 9;  *of* 1845, 76,  § 2 ;  1847, 135 ;  *of* 1848, 200 ;  *of* 1850, 264, § 1.)  (2.)  The street commissioner was authorized to lay the assessment.  (*Laws* 1850, 273, § 30.)   (3.) The authority conferred on the common council, and on the commissioner, was duly executed.

*By the Court,* BROWN, J.   The plaintiff invokes the interposition of the equitable powers of this court to avoid the assessment for grading Washington park, and to restrain the collector, Isaac P. S. Briant, from proceeding under the warrant to enforce the same, upon two grounds.  1st. To prevent a multiplicity of suits, and the consummation of an act greatly injurious to the plaintiff and to others, whose lands are charged with the assessment, and for whose benefit and in whose behalf in common with himself the complaint is filed; and 2d.  To remove the cloud upon the title of the lands of the plaintiff and those other persons for whose benefit the complaint is filed, created by the lien of the assessment.   Neither of these grounds is, in my judgment, tenable.

It may be important to ascertain in what cases and for what reasons the practice of the equity courts permits a plaintiff to file a bill in his own behalf as well as in that of all other persons interested in the same question.   This class of cases forms an exception to the general rule, that all persons materially interested, legally or beneficially, in the subject matter of the suit, are to be made parties, either as plaintiffs or defendants, however numerous they may be.   Whenever there is reason to apprehend that a strict adherence to the rule will put it out of the power of the court to administer the relief sought, then it may and should be dispensed with.   " The general rule is, that all persons mutually interested, either as plaintiffs or de-

fendants, are to be made parties. There are exceptions just as old and as well founded as the rule itself. When the parties are beyond the jurisdiction of the court, or so numerous that it is impossible to join them all, a court of chancery will make such decree as it can without them. Its object is to administer justice, and it will not suffer a rule founded in its own sense of propriety and convenience to become the instrument of a denial of justice to parties before the court, who are entitled to relief. What is practicable to bring all interests before them will be done. What is impossible or impracticable, it has not the rashness to attempt; but it contents itself with disposing of the equities before it, leaving as far as it may the rights of others unprejudiced." ( *Wood* v. *Dummer*, 3 *Mason's Rep.* 317.) If that rule (requiring persons interested to be made parties) were to apply in its strictness to a case of this description, this consequence would follow, that justice in such a case would be unattainable in this court; because it is perfectly certain that if it were necessary to put upon the record the names of all the persons who are members of the partnership when this bill was filed, for they then amounted to very nearly 600, it would be utterly impossible that the suit should ever come to its termination, from the necessary abatements which would from time to time take place from deaths and other causes." (*Small* v. *Allwood*, 1 *Younge's R.* 457.) Thus it is seen that the rule which permits the omission of parties interested in the question litigated, and the filing of a bill by one in behalf of all others interested, is adopted from necessity, to prevent a failure of justice, which could not otherwise be obtained. The examples given by Mr. Story, in his treatise upon equity pleadings, will further illustrate what has been said. A part of the crew of a privateer may bring a suit against the prize agents, in behalf of themselves and others, who had signed the articles, for an account and distribution of the prize money. A few creditors may maintain an action in behalf of themselves and all the other creditors of a deceased debtor, for an account and application of his assets to the payment of his debts. So creditors, parties to a trust deed for the payment of debts, are allowed to

sue on behalf of themselves and the other creditors named.  A legatee may also prosecute in the same form for a settlement of the account of the executor and the payment of all the legatees. The parties also to a voluntary association for public or private purposes, may in like manner sue and defend in behalf of themselves and their associates.   Where a rate is to be assessed by commissioners upon the inhabitants of a town, in aid of a charity, some may sue in behalf of themselves and others, alleging a misapplication.  So a few of a large number of parishioners were permitted to sustain a bill on behalf of themselves and the rest, for relief against acts done by commissioners under an act of parliament, injurious to their common right.   These examples might be multiplied *ad infinitum,* but I have not been able to find any of them to which the case made by the plaintiff in this action bears any resemblance.  His action is not brought to assert a common right, nor to procure an account and distribution of a common fund ; nor to restrain the commission of an act injurious to property or rights in which he and those in whose behalf he sues has a common interest.   If the persons whose property is alleged to be charged with the lien of the assessment were less numerous, than they are ; if, indeed, they were but two or three in number, there would be no manner of necessity for making them parties ; for either could sue alone. The lands supposed to be affected by the cloud, are held in severalty, and the nonjoinder of the others could not be set up as a reason why the action at the suit of one should not proceed. The reason, therefore, why the law allows bills to be filed at the suit of a few, in behalf of themselves and others, does not apply to such a case.   Seen in this aspect, the action is for the benefit of the plaintiff alone ; and is to be disposed of in the same manner as if the charges and allusions to others were stricken from the complaint.

Can the complaint be regarded as in the nature of a bill of peace ?  And does the plaintiff bring himself within the principles which govern actions brought for repose and to repress litigation ?   " Bills of peace are brought to establish and perpetuate a right which from its nature may be controverted by

different persons, at different times and by different actions. They may be resorted to when one person claims or defends a right against many, or where many claim or defend a right against one. The obvious design of such bills is to procure repose from perpetual litigation, and they are therefore called bills of peace." (*Story's Eq. Jur.* §§ 853, 854.) "Bills of this nature may be brought by a parson, for tithes, against his parishoners ; by parishioners against a parson, to establish a modus, (which is a particular local manner of tithing, different from the general law ;) by a landlord against tenants, for encroachments under color of a common right ; or by tenants, against the lord, for disturbance of a common right ; by a party in interest to establish a toll due by custom ; by a like party to establish the right to the profits of a fair, there being several claimants ; by a lord to establish an enclosure which has been approved under the statute of Merton, and which the tenants throw down although sufficient common of pasture is left." (*Id.* 855.) It will be seen that in these actions there is a common right to be asserted or maintained, in which numbers, either on the one side or the other, or upon both sides, have a common interest, or there must have been repeated attempts to litigate the same question, as in the old action of ejectment when the verdicts and judgments did not conclude the parties. *The City of London* v. *Perkins*, (4 *Brown's Parl. Rep.* 157,) was a bill filed to establish a right to a duty against certain dealers in the article whereof the duty was claimed, a few only of the dealers being made parties. The action was maintained upon the ground that a great number of actions might be brought. *The Mayor of York* v. *Pilkington and others*, (1 *Atk.* 282,) was an action to quiet the plaintiffs in a right of fishery in the river Ouse, of which they claimed the sole fishery for a large tract against the defendants, who claimed several rights as lords or occupants of adjacent lands. The lord chancellor thought the bill proper, and overruled the demurrer. In *Tenham* v. *Herbert*, (2 *Atk.* 483,) the same doctrine was recognized, but the demurrer was allowed upon the ground that the right to the oyster fishery was only in dispute between two

persons, and there had been no trial at law. *Earl of Bath* v. *Sherwin*, (*Prec. Ch.* 261,) and *Leighton* v. *Leighton*, (1 *P. Wms.* 671,) were cases where the court entertained bills to repress further litigation in the action of ejectment, after there had been several trials and satisfactory judgments at law. In *The Trustees of Huntington* v. *Nicoll*, on appeal, the respondent Nicol claimed to be the owner of certain islands upon the south side of Long Island, which were also claimed by the appellants, in trust for the inhabitants of the town of Huntington. Four several actions of trespass had been brought against persons who entered under authority of the trustees, which had been removed into the supreme court. There was a trial in one of them and a verdict for the respondent. The court of chancery and the court for the correction of errors sustained a suit brought to prevent a multiplicity of suits at law, and to have the title tried and finally settled. In *Eldridge* v. *Hill*, (2 *John. Ch. Rep.* 281,) the chancellor refused to entertain a suit to restrain the defendants from continuing to commence suits for obstructing a water course which conducted the water from the defendant's mill through the lands of the plaintiff; holding that a bill of peace, enjoining litigation, would only lie where the plaintiff had already satisfactorily established his right at law. Or when the persons who controvert it are so numerous as to render an issue, under the direction of the court, indispensable to embrace all the parties concerned and to save a multiplicity of suits. In *West and others* v. *The Mayor, &c., of New-York*, (10 *Paige*, 539,) the plaintiff had obtained an injunction from the master, restraining the defendants from prosecuting suits against the plaintiffs and their agents, for breaches of the ordinance relating to weighing coal. The chancellor dissolved the injunction, holding, amongst other things, that if the ordinances were invalid and did not render the complainants liable to a penalty, they had a complete defense at law. The plaintiff in the case now before the court, states no ground upon which he can reasonably apprehend a multiplicity of suits or a repetition of the litigation, after the validity of the assessment for grading the park has once been determined. There is but a

single person to litigate with him, and one trial and judgment unreversed will be final. He therefore does not bring himself within the principle of any of the cases in which bills for peace and repose have been sustained. The most that he has reason to apprehend is a single trespass by the seizure of his property under the collector's warrant, and for that he has an adequate remedy in damages.

The plaintiff next claims to have the cloud upon the title of his lands, created by the assessment, removed by a decree of the court. To entitle himself to relief upon this ground he must show that the assessment if regularly made by persons having authority for that purpose would constitute a lien upon the lands supposed to be charged; that the proceedings are irregular and void, and that the irregularity which vitiates them does not appear upon the face of the proceedings themselves, but can only be made to appear by facts the evidence of which is outside and extrinsic of the proceedings. The power of the corporation of the city of Brooklyn to grade Washington park, and to make an assessment to defray the expenses, is not disputed. Whether it should be by a local or a general assessment, whether it should have been made as it was made by the street commissioner, under section 30 of title 4 of the act relating to the city of Brooklyn, passed April 4th, 1850, or by three commissioners to be appointed by the county court or the supreme court, under section three of the same title, I shall not stop to determine. This branch of the case may be safely disposed of upon another ground. " Every statute authority in derogation of the common law, to divest the title of one and transfer it to another, must be strictly pursued or the title will not pass. This mere naked power in the corporation, and its due execution, is not to be made out by intendment. It must be proved. It is not a case for presuming that officers have done their duty, but what they have in fact done must be shown. The recitals in a conveyance are not evidence against the owners of the property, but the fact recited must be established by proof *aliunde.* He (the purchaser) must show, step by step, every thing which has been done which the statute makes essential to the due execution of

the power." (*Sharpe* v. *Speir*, 4 *Hill*, 76.) Each of the separate proceedings upon which an assessment like that in question is made is essential to its validity, and if one is wanting, the assessment and the sale under it is absolutely void. The plaintiff charges " that many of the facts showing the irregularity in the proceedings to impose the alleged assessment and the invalidity thereof will not appear upon the face of the papers, or proceedings necessary to establish such lien, and can only be shown by testimony outside and extrinsic of such papers and proceedings." He nowhere points out what the irregularities are to which he alludes. And if the complaint had rested upon this general charge alone, it must have been adjudged bad on demurrer ; for, to make out a case of equitable cognizance, he was bound to charge specifically in what particulars he deemed the proceedings irregular. He does however charge that the corporation had no color or authority of law to take proceedings for assessing the expenses of grading the park as a local assessment, and that it should have been made by commissioners appointed by the county court or the supreme court, and not by the street commissioner of the city of Brooklyn. These errors —if they are errors—are patent upon the face of the papers. The first step taken in the defense of an action of trespass for seizing property under the collector's warrant, or in the trial of an action of ejectment brought to assert the title to lands, made under the assessment, would disclose them. The plaintiff is therefore brought by his own complaint within the class of cases in which the courts of equity have uniformly refused to interfere, as the authorities will abundantly prove. In *Mooers* v. *Smedley and others*, (6 *John. Ch. Rep.* 28,) it appeared that the supervisors of the county of Clinton had illegally charged with the taxes certain moneys allowed as bounties for the destruction of wolves, and the court of chancery was asked to restrain their collection by injunction until the judgment was given upon certiorari to remove the assessment and proceedings into the supreme court. The chancellor refused the injunction, declaring that " in the whole history of the English court of chancery there is no instance of the assertion of such a jurisdiction." In *Pet-*

*tit* v. *Shepherd,* (5 *Paige,* 493,) the late chancellor asserted " the jurisdiction of the court to set aside deeds and other legal instruments which are a cloud upon the title to real estate, and as a necessary consequence to interpose its aid to prevent such shade from being cast upon the title when the defendant evinces a fixed determination to proceed with the sale." But he did not consider the nature of the defects in the deeds or other instruments, whether latent or patent, which would justify its interposition. *Oakley* v. *Trustees of Williamsburgh,* (6 *Paige,* 262,) was a bill filed for an injunction to restrain the defendants from altering the grade of a street as theretofore established, and from digging down the street to the injury and detriment of the complainants, who were property owners. The chancellor allowed the injunction ; and although the opinion delivered contains some expressions which would seem to favor the position of the plaintiff in this action, the case decides nothing more than that after the grade of a street had been regulated and established by the trustees, they could not alter it as the charter then was. *The Mayor, &c. of Brooklyn* v. *Meserole,* (26 *Wend.* 132,) was a bill filed to vacate and set aside an assessment charged to have been illegally made for widening and extending Bedford road, upon the ground that it was an incumbrance and a cloud upon the respondents' title. Chief Justice Nelson delivered the opinion in the court of errors, and he pronounces what must be regarded as the true doctrine. " The doctrine," he says, " grew out of applications to have surrendered up and canceled deeds and other instruments which were utterly void, but might be used as a means of casting a doubt over the title, and in the lapse of time endanger its security from the loss or difficulty of procuring evidence of the fact. But even the exercise of the power in such cases fluctuated some time, in England, Lords Thurlow and Loughborough inclining against it on the ground that the party's remedy at law was complete. It cannot indeed be said to have taken root as an established doctrine of the court until the time of Lord Eldon. (7 *Ves.* 313. *Id.* 581. 17 *Id.* 111.) And it is now still denied there when the instrument is void upon its face, as it is no better than blank paper,

incapable of being used for vexatious purposes. (3 *Mylne &*
*Craig*, 97. 7 *Sim.* 627.) Has a court of equity ever claimed
or exercised the right of inquiring into the proceedings of sub-
ordinate tribunals of special and local jurisdiction, had either
under a statute or the common law, which may affect the owners
of real estate, with a view to set them aside if void at law, as an
obstruction or cloud upon the title? Unless this general author-
ity can be established, none can be derived by inference to in-
terfere to prevent the proceedings, for it is vain to argue that
the court may interfere and arrest them, if no authority exists to
review and set them aside after consummation." He admitted
there were two exceptions to the general rule; where the in-
terposition of the court was necessary to prevent a multiplicity
of suits, and where the proceedings of the subordinate tribunal
or the acts of public officers, affecting real estate, might in their
execution occasion irreparable injury to the freehold. The court
for the correction of errors coincided with these views, and the
decision of the chancellor affirming the injunction was reversed.
*Wiggin* v. *The Mayor of New-York*, (9 *Paige*, 16,) and *Van
Doren* v. *The Mayor of New-York*, (*Id.* 388,) are authorities
affirming the same doctrine. *Livingston* v. *Hollenbeck*, (4
*Barb.* 9,) was a bill filed to restrain the sheriff of Columbia from
proceeding to advertise and sell certain lands of the plaintiff
under warrants issued to him by the county treasurer, for taxes,
upon the ground of irregularities in the assessment. The court
at general term dissolved the injunction, holding that " if the
proceedings were void, the law affords an adequate remedy with-
out resort to a bill in equity. In such case the sale of the wood
lots in question would not divest the title of the plaintiff, but he
would have a perfect defense at law against an action to recover
from him the possession." *Fleetwood* v. *The City of N. York*,
(2 *Sandf. S. C. Rep.* 475,) was an action brought to recover
back money paid to redeem several lots of ground from a sale
made under an assessment for filling the lots, which was alleged
to have been illegal. The opinion delivered by the late Justice
Sandford contains this paragraph: " The muniments of title
upon an assessment sale consist of several proceedings, all of

which are indispensable to its validity, and if one be wanting no title is shown. Of these links in the chain the plaintiff insists that three at least never existed; the original ordinance directing the filling, the assessment of the expense, and the advertisement for redemption. Each of these proceedings forms an essential part of the record of the assessment title, and in their absence such title is void upon its face. A conveyance or judgment void upon its face does not constitute a cloud upon the title: assertion of a title under such a conveyance does not afford a ground for equitable interference." (*See also* 2 *Story's Eq. Jur.* § 700 *a, and Cox v. Clift,* 2 *Comst.* 118.) These authorities cover the whole ground in controversy, and are in my judg ment decisive against the plaintiff.

The judgment for the defendants upon the demurrer, at the special term, should be affirmed.

Judgment affirmed.

[Dutchess General Term, July 4, 1853. *Barculo, Brown* and *S. B. Strong,* Justices.]