Robinson, J.
The present application is to continue and make absolute a preliminary injunction, restiaining the corporation, their board of assessors, and *342 of revision and correction, from proceeding to act upon and lay an assessment for paving the Seventh-avenue from Fourteenth to Fifty-ninth-street, with a wood pavement, known as the Stafford pavement. The action is brought by the plaintiff, as owner of lands fronting on Seventh-avenue, to be affected by such assessment, on his own behalf, as well as on behalf of all others in like interest.
Previous to 1868, the Seventh-avenue had been paved with cobble stones, and the crosswalks laid and sidewalks extended to the width required by law. On March 10, 1868, an ordinance was duly passed by both boards of the common council, over the veto of the mayor, authorizing the Croton Aqueduct Department to advertise for bids, and contract for the paving of the avenue with the Stafford pavement, except such parts as were already paved with Belgian pavement, and also laying and relaying crosswalks at the intersecting streets, and that a contract be awarded therefor, provided the expense did not exceed five dollars per square yard. On December 33,1869, this ordinance was amended by a resolution passed by both boards and approved of by the mayor, “that inasmuch as rock must be excavated upon the surface of said avenue, to enable the said pavement to be laid, the price for such pavement shall not exceed the sum of six dolars and fifty cents per square yard, which shall cover the cost of laying the pavement and of removing such rock.” And the Croton Aqueduct Department were authorized and directed to advertise for bids, and contract accordingly. Under such resolutions, a contract, dated February 33, 1870, was made by the Croton Aqueduct Board, for the performance of the work at six dollars and fifty cents per square yard for the pavement, one dollar and forty cents per square foot for the new bridge-stones, and thirty-five cents per square yard for relaying the (then) present bridge-stones, and *343 the contractor was also to be allowed all the old materials, cobble-stones, &c., except sewer man-hole heads, and the frames and heads to Croton or gas stop-cocks. The contractor proceeded and laid the pavement, except that portion occupied by the rails of the double track of the Broadway & Seventh-avenue Railroad Company, laid through the whole of Seventh-avenue, below Fifty-ninth-street; as authorized by chapter 513 of the Laws of 1860, and the space; between the rails of each track traveled on by the horses of the railroad company. Notwithstanding such substantial omission, the board of assessors had proceeded to lay an assessment on the property owners for the cost of the work, had disregarded the various objections made by the plaintiff, and were about delivering over their assesment lists to the board of correction and revision when this action was commenced, and a preliminary injunction obtained. Much weight was given in the complaint to a charge of fraud and collusion, in erroneously setting out the resolution of December 22, 1869, above recited, and omitting, through mistake, the words “hot to exceed,” and under the supposition that the resolution authorized an absolute increased allowance of one dollar and fifty cents per square yard for the pavement irrespective of any more favorable bids or proposals, in consideration of the existence of only about one hundred yards of rock ; but this point has not been urged on the argument. This proceeding is also charged to be, in various respects, irregular and void, by reason : 1. Of the provisions of the act 1870, ch. 383, enacting, that no street or avenue that had once been paved at the expense of the owners of the adjoining property by assessment, should thereafter be paved with any patent pavement, unless petitioned for by a majority of the owners on the line of the proposed improvement; nor unless the resolution or ordinance authorizing it should be approved by the *344 mayor, and that any ordinance or resolution, theretofore passed- without such approval or petition, and for which no contract had been entered into and upon, was thereby declared imperative and void. The allegations of the complaint assert this work to have been within the latter prohibition, but that is denied. 2. That the provisions or sections 7 and 37 of the charter of 1857, had been disregarded. Section 7 requires all resolutions and' reports of committees of the common council, recommending any specific improvement requiring the appropriation of public money, or the taxing or assessing of citizens, to be published immediately after the adjournment of the board, in all the newspapers employed by the corporation, and that they shall not be passed or adopted until after such notice has been published two days, and that whenever a vote is taken in reference thereto, the ayes and noes shall be called and published in the same manner.
Section 37 also requires (among other things), that whenever a vote in either board is taken on the passage of an ordinance, which shall contemplate any specific improvement, or the expenditure of public money, or the laying of any tax or assessment, such ordinance shall, before the same shall be sent to the other board, and immediately after the adjournment of the board at which the same shall have been passed, be published with the ayes and noes, and with the names of the per,sons voting for and against the same, in the newspapers employed by the corporation, as part of the proceeding. These provisions have been recently held by the court of appeals, in the Matter of George W. Douglass (12 Abb. Pr. N. S., 161), to be mandatory. 4. That notice for bids or proposals for doing the work was not published for at least ten days in each of the daily papers employed by the corporation for that purpose, as required by section 38 of the charter of 1857 {Laws of 157, ch. 446). This is also denied. • 6. That the pro *345 posáis, contracts and papers relating thereto were never laid before the common council, or confirmed by that body, as required by the Corporation Ordinance of 1859, 178, § 15. It is denied that any such restraint existed, it being claimed that the contract became obligatory on execution by the Croton board, under chapter 30 of the Laws of 1861. 6. That the Stafford pavement being a patented article, the proceeding to invite proposals for a contract to lay it was a delusion and fraud, as no one but the patentee or his assignee for this city could undertake the work, and it was not a case allowing competition. This is also denied. 7. That the ordinance of March 10, 1868, only, authorized the imposition of an assessment for the pavement, at five dollars per yard, and the amendatory resolution of December 22, 1869, increasing the price that might be allowed, did not authorize any assessment for the increased price, or that allowed in the contract for bridge stones. 8. It is also claimed that the existing ordinance of June 20, 1859 (Corp. Ord., of 1859, p. 237, § 2), providing that when the carriageway of any of the streets had been repaired or newly paved, and the crosswalks laid and sidewalks extended to the width required by law, at the expense of the individual owners of the lots in the same, and the work approved, such streets or parts of streets should forever thereafter be paved, repaired and repaved at the expense of the corporation, but it was not to be construed to apply to any wooden pavement, was in the nature of a contract with the owners; that the avenue had been so previously paved, and this re-pavement was not chargeable to the owners of the lots; but this cannot be maintained (Presbyterian Church v. Mayor, &c. of New York, 5 Cow., 538; Rhinelander v. Mayor, &c. of New York, 24 How. Pr., 305; In re Lewis, 51 Barb., 81; Tilden v. Mayor, &c. of New York, 56 Id., 340).
*346 It has been established by numerous decisions of the courts of the State, that their equitable powers could not be invoked by a party claiming to be injured by the imposition of a public tax or assessment, creating a lien upon or affecting the title to his property, when the adverse claimant through such proceeding is required to show its entire regularity; and the alledged irregularity or error must be disclosed by the "* record of the proceeding when so produced, or in the course of the proofs necessary to be adduced to show the existence and due exercise of the power to impose the tax. ¡Neither the actual invalidity nor the threatened injury, arising from the imposition of an ostensible lien or cloud upon the title, furnishes any ground for interference by injunction, nor will that remedy be interposed, while there is an adequate remedy at law to resist, or to review and correct the erroneous proceeding. The exceptional cases in which a court of equity will interfere, are only such as are brought within some well acknowledged head of equity jurisdiction, and are embraced within three classes, First. Where the proceeding in the subordinate tribunal will necessarily lead to a multiplicity of suits. Second. To the commission of irreparable injury, and Third. Where the title to be derived under it is prima facie valid by force of the instrument or proceeding sought to be enjoined or set aside (Susquehanna Bank v. Supervisors of Broome County, 25 N. Y., 314; Overing v. Foote, 43 Id., 290; Dows v. City of Chicago, 11 Wall., 108; Tilden v. Mayor, &c., of New York, 56 Barb., 340); and extrinsic facts are necessary to, be proved, in order to establish its invalidity or illegality (Heywood v. City of Brooklyn, 14 N. Y. [4 Kern.], 537).
As to the first ground, the grievance of being liable to a multiplicity of suits must be one to which the plaintiff is subject, and of which he complains. A person liable in respect to a proceeding which may create a *347 lien or cloud on the title of his separate property, cannot act as a volunteer for others, and initiate and maintain an action, as well on his own, as on the behalf of others whose property may be similarly affected. The utmost to be apprehended by the proceeding sought to be enjoined, so far as plaintiff is concerned, is, that it will create a distinct lien for some specific amount upon his separate property. In the protection of his own property, he has no unity of interest with any others, and the only community of interest, is that which exists in the legal questions involved.
Actions authorized to be brought by one, on behalf of a class, partake of the character of actions in rem, and the judgment binds all the parties having a common interest in the property of fund in dispute, whether they come in and are made parties or not. It is manifest from the present case, that the right of the plaintiff to institute and carry out a litigation involving mere questions affecting the title to his own lots, can, upon no principle of equity or justice, involve or supersede that of any other person to test the same question, so far as it affects his own property, in such way as they choose. The decisions clearly negative any assumption of championship for others (Bouton v. City of Brooklyn, 15 Barb., 375; Magee v. Cutler, 43 Id., 239; Thurston v. City of Elmira, 10 Abb. Pr. N. S., 119; Watson v. City of Brooklyn, opinion of Judge Gilbert, MSS.).
No case of irreparable damages is suggested, but it is claimed that the case presents numerous facts beyond those which would be apparent on the face of the proceeding, or which would necessarily be required to be shown on the trial as existing to create the power, or the due course of its execution.
I am unable to discover any such extrinsic fact, material to the controversy, which it would not be permissible to establish, either on a trial of such title as would be conferred upon an assessment sale, or cer *348 tiorari, or upon proceedings had to annul or correct the assessment under the provisions of chapter 338 of the Laws of 1858, and section 27 of chapter 383 of the Laws of 1870.
But if, in the many matters alleged in the complaint by way of impeachment of the regularity or validity of the proceeding, there may be some partaking of the character of extrinsic facts, they do not constitute any ground for maintaining this action, and they would only be available as ground for a suit in equity where either the record of the proceeding or the lease to be executed, or any sale for the assessment should constitute such prima facie evidence of the correctness of the proceeding, as would be necessary to rebut or disprove. In Hey wood v. City of Buffalo (14 N. Y. [4 Kern.], 541), Johnson, J., states the rule: “In order to bring the case within the third exception (above stated) and the jurisdiction of equity on that ground, the - complaint should have alleged distinctly and plainly that the proceedings were apparently within the powers of the common council, and upon their face were valid, and created a valid lien; and it should have then alleged, that notwithstanding such .apparent validity, the proceedings were wholly void, by reason of certain extrinsic matters which should be stated, and which it should appear by the complaint could only be established by other evidence. These' facts are the very ground of the jurisdiction. Apparent validity and total invalidity in fact.”
The gravamen of this complaint does not rest on any such matters; the entire invalidity of the assessment is asserted on numerous substantial grounds, and while the case presents such features, the basis foi equitable interference, or for maintaining the in junction, is wanting.
For these reasons, the injunction should be dissolved, and the motion for its continuance denied, with ten dollars costs.