By the Court.—Sedgwick, J.
This action was upon a promissory note for one thousand one hundred thirty-five dollars and thirty-five cents, made by Strenz, .one of the defendants, and indorsed by Schafer, the other of the defendants.
The answer was, that this note was one of four (three of them for one thousand one hundred and thirty-five dollars and thirty-five cents, and the fourth for two hundred' and eighty-nine dollars and thirty-five cents), made by Strenz, indorsed by Schafer, and given to the plaintiffs, that Strenz, being indebted, had made with various of his creditors, and among them the plaintiffs, a composition agreement, by which the creditors were bound to accept for the amount of their respective claims, these promissory notes, at three, six, and nine months, in the aggregate, for. thirty per centi of such' claims, to be indorsed by defendant and Schafer; that the four notes above referred to were given as if in pursuance of this agreément, but were in fact drawn by the plaintiffs, in sums much larger than had been specified in the composition agreement; that is, for sixty per cent, instead of for thirty per cent, of the plaintiff’s claim, in fraud of the creditors who had signed the agreement, and in fraud of the defendants ; that the first of these notes has been, paid; that “ the whole amount to be paid the plaintffs under the agreement above set forth, amounted to the sum of one thousand. eight hundred and one dollars and five cents, with interest from July 6,1869 ; and that, deducting the sum of one thousand one hundred and thirty-five dollars and. thirty-five cents, already paid • as above, there remains due only the sum of seven hundred and sixty-eight dollars seventy cents, with interest from July 6, 1869, which these defendants have repeatedly offered to pay the plaintiffs upon a surrender of all the notes given under the aforesaid agreement, and which they *493 are and always have been willing to pay, but which sum the plaintiffs have refused.”
On the trial it appeared from the plaintiff’s testimony, that when Schafer indorsed the notes, he did not read them, and that virtually the plaintiff represented to him, that the notes were for the thirty per cent, named by the agreement, and that he, believing this to be the fact, indorsed the notes, which were for sixty per cent. The court charged the jury, that under the circumstances, except for the admission made by the indorser in the answer, he should direct the jury to find a verdict in his behalf; but that if the indorser was deceived into endorsing the notes, the verdict against him must be for the amount admitted in the answer, seven hundred and sixty-five dollars and seventy cents, with interest,—to which the defendant’s counsel excepted.
If the court’s attention had at the time been pointed to the form of the admission of the answer, it would have noticed that the averments were, that under the composition agreement seven hundred and sixty-eight dollars and seventy cents only remained due, and that the defendants had promised to pay this upon a surrender of all the notes. This seems to be no admission that anything was due under the cause of action stated in the complaint, as affected by the allegations of the answer. Effect should be given to the averment that the sum the defendants had offered to pay upon a surrender of the notes, as qualifying the succeeding averment that this sum the defendants have been always willing and ready to pay. The answer was in substance, that there was a full defense to the note, but that they were willing to be bound by the composition agreement, provided the plaintiff returned to them the other notes which the answer alleged they had no right to retain.
The court, therefore, inadvertently erred in this instruction to the jury.
*494 A more important matter may be considered, upon the exception made by the defendant’s counsel to the following charge of the court: “If you believe these three witnesses in regard to that transaction, the plaintiffs are entitled to your verdict, as against the defendant Strenz, for the entire amount of the claim, which is one thousand two hundred and eighty-nine dollars and thirty-seven cents.”
The three witnesses referred to were one of the plaintiffs, the book-keeper of the plaintiffs,- and the attorney at law of the plaintiffs.
By their testimony it appeared that Strenz became insolvent. At his request the plaintiffs caused to be drafted the composition agreement as follows: “We, the undersigned creditors of Mr. A. 0. Strenz, do hereby agree to accept for the amount of our respective claims the sum of thirty cents on a dollar at three, six, and nine months, with a satisfactory indorsement, with interest from date of notes.”
The attorney for the plaintiffs was employed by them, at a yearly salary. He had his office in their store, and gave to them all of his time that they required for their business. He was out of the city at the time the composition agreement was drawn. One of the plaintiffs testified that before their attorney came back to town the defendant Strenz had said to the witness, “that if I could get the settlement through, or thought that we could aid him in getting it through, he would be willing to pay us two to one ; that was the thing exactly. I told him that we could not afford to do anything, or that we could not afford to let our attorney spend his time without being paid something. I introduced our attorney to Mr. Strenz. I told him what Mr. Strenz had proposed, and that if he would take hold of the matter he could take hold.”
The attorney testified that the last witness introduced him to Mr. Strenz and said, “Mr. Strenz is in *495 difficulty; lie is obliged to make a settlement of his indebtedness; we have got a paper drawn and have been at work some little time about it, but do not appear, to make any headway, and we want you to take hold of it, and I will tell you what he is willing to do. He is willing to give you the same amount he settles with us for ” “ for my services in obtaining a settlement.”
Under the court’s charge, the jury, in viewing the testimony of these two witnesses, perhaps might reconcile the statements and believe that the first witness had testified accurately in saying that the plaintiffs were to be paid two to one, inasmuch as they could not afford to lose their attorney’s time, for which they paid a salary, unless Strenz would give a compensation, which was, according to the attorney’s testimony, to take the shape of a payment, or seeming payment to him, for his services. It was to be accomplished in this way. Strenz would pay the attorney an amount equal to thirty per cent, of plaintiffs’ claim, and the plaintiffs would stop an equal amount out of the attorney’s salary. It seems impossible to doubt the testimony of one of the plaintiffs, that the agreement was that they were to have two to one if they got the agreement through, or aided in doing this.
The plaintiffs say they communicated this to the attorney. But the attorney says their communication was that given above. The agreement was, however, not waived, as matter of fact, although the attorney undoubtedly believed that he was interested in the agreement. The attorney acted upon the agreement as he understood it. He spent much time, and did much, in securing the signatures of creditors to the instrument. The plaintiffs signed it last. This is a fact, with much, meaning.
If their endeavor, under their" private agreement, had been only to get the agreement signed by creditors, *496 it would have been quite influential to that end that they should sign at once as creditors in a large amount.
The attorney, following his own understanding of what the agreement was between the plaintiffs, Strenz and himself, drew six notes, three of them to plaintiffs’ order, for their thirty per cent., and the other three to his own order for an equal amount. If these notes had been made and indorsed and delivered, it is only a conjecture what use the plaintiffs would have made of the three drawn to their attorney’s order, under their verbal agreement with 'Strenz. The fact was that Strenz, learning that there were six notes drawn, told the attorney that Schafer, on seeing that there were six, would be , very likely to object on that account to sign them. The attorney, probably thoughtlessly, destroyed the six notes, and drew them only for the same aggregate amount, making sixty per cent, of plaintiffs’ claim, to the order of the plaintiffs. These were signed and indorsed. The attorney testifies that afterwards the plaintiffs “had them, and kept them ever since. They did not belong to me; half of them belonged to the plaintiffs and half to myself. Out of the first note which was paid, I did not get my half; they kept the whole of it—my half has gone to them as the salary I received'—towards paying them what they paid me— _ towards my four thousand dollarsthe plaintiffs “received the whole of it, and out of it they paid me a salary, so that, after all, half of these notes were not for me, really ; they were for the plaintiffs ; and out of it the plaintiffs were to pay me my salary, if you choose to put it in that way.”
It in this way appears that the promise to pay the attorney for services was the means used for the accomplishment of the agreement that the plaintiffs were to have two to one. This was not the less the real fact because the attorney at one time believed that he was really to receive the compensation. It may be that the *497 plaintiffs were sufficiently convinced for their own purposes that at the right stage the attorney would follow their wishes or commands.
This was the substance of the testimony of the three witnesses referred to by the court in that part of the charge under consideration. The securities, that is, the notes so obtained by the plaintiffs, were fraudulent and void.
“Whenever a composition is made with creditors every agreement or arrangement by which an advantage is secured by any one or more of the creditors, which is denied to others, is a fraud upon the creditors from whom it is concealed, although it neither has, nor can have, the effect of depriving them of any portion of the amount which they had agreed to receive.”
Of course, a person about to sign as security or indorse paper given in composition, is interested in knowing, and entitled to know, the real amount of liability the debtor is to assume under it—concealment of additional liability to be undergone by the debtor is injurious to him, and is fraudulent.
The creditors who do not receive this advantage are presumed, in the absence of proof to the contrary, not to have known that the agreement was made for the secret advantage.
• These rules are applicable to this case, although it is claimed that the additional security given to the plaintiffs was for their services in getting the composition through, and not for their execution of it. In the first place, if the secret agreement were in fact, to compensate for services,- it was only so in part, because it clearly implied that the plaintiffs were to sign, as well as to get others to sign. In the second place, when the agreement is considered, in its relation to circumstances, it appears to be simply a colorable device to gain an advantage over other creditors. In the third place, if it was actually intended only to provide reasonably *498 for the payment of services, which were for the common benefit of all creditors thus led to make a settlement beneficial to them, the other creditors should not have-been left ignorant of it. Such agreements, from their nature, are likely to be used to the injury of persons interested, and are against the policy of the law, and are void. This last observation is meant to be confined to the case of a creditor, bargaining for compensation, under a state of facts like those in this case (Pinne v. Higgins, 12 Abb. Pr. 343; Hall v. Merrill, 5 Bosw. 267; Renard v. Fuller, 4 Id. 107 ; Hughes v. Alexander, 5 Duer, 488; Russell Rogers, 10 Wend. 479 ; Brick v. Cole, 4 Sandf. 79).
In this last case cited, it is said that in cases like the present, the agreement for additional security is void as against the other creditors, because it is wrong to them, but that it is void as against the debtor, because he is said to have acted under a moral duress, made by the claim for advantage, and the implied threat, that if such claim is not granted, the creditor will not sign. If there is a distinction which should be kept in view in cases against the debtor, such duress appears by the evidence to have existed in this case. The evidence is not abundant, but is sufficient on this point. If there was no evidence of its existence, inasmuch as such a private agreement is a wrong to the other creditors, it is the duty of the debtor not to make it. If, however, it be made, the creditor, by paying under it, puts the agreement into practical effect, and does another wrong to the creditors. By payment, he would reduce his assets, which the creditor'believed or had a right to believe would not be lessened by a private and fraudulent contract. It would seem that the law must allow a debtor to refrain from this additional wrong, and will permit him to defend on such grounds, in an action to enforce the secret agreement.
The plaintiffs claim that at least they should recover *499 in this action, as much as they could, at all events, have had under the composition, or if the note in action had conformed to the composition. No decision is now made in reference to the parties’ rights, under the original and legal agreement. It cannot, however, be said that the note in suit only fails for a part of the consideration. The consideration of the note was an agreement, and was illegal, not in part, but wholly. There can be no recovery based upon this illegal consideration.
Judgment must be reversed, and a new trial granted, with costs to abide the event.