1837.

Oakley
v.
Trustees of
Williams-
burgh.

OAKLEY *vs.* THE TRUSTEES OF WILLIAMSBURGH and MOORE.

The trustees of the village of Williamsburgh are not authorized by the village charter to alter the grade of a street, after the grade thereof has been regulated and established by them as directed in the act of incorporation. And where such trustees were proceeding to dig down and alter the grade of a street, which had been regularly graded and regulated ; *Held,* that the owner of adjoining lands, whose property would be seriously injured by an alteration of the grade, was entitled to an injunction to restrain such illegal proceedings of the trustees.

The court of chancery has jurisdiction to interfere by injunction to restrain the defendant from proceeding in an illegal act which will necessarily cast a cloud upon the complainant's title to real estate, and will naturally diminish its value.

January, 23.    THIS was an appeal from the vice chancellor of the first circuit, refusing to grant an injunction.   The bill of complaint in this case, which was filed by the complainants in behalf of themselves and all others having a common interest with them, after setting out that part of the act of incorporation of the village of Williamsburgh which made it the duty of the trustees to cause a survey and map of the village to be made, exhibiting the streets, roads and alleys to be permanently laid out, and also exhibiting on such map all the gradations and regulations which might or should be required in the roads, alleys and streets, accompanied by such remarks and explanations as the nature of the subject might require, to be kept by the clerk, subject to the inspection of the freeholders and inhabitants of the village, so that no person could plead ignorance of the plan to be adopted for opening, laying out, levelling and regulating the streets of such village, (*Laws of* 1827, *p.* 276, § 19,) stated that, in pursuance of their act of incorporation, the trustees of the village caused such survey and map to be made, signed and filed, as directed by the act, except that the gradations of the streets were not exhibited on the map ; that such gradations were omitted on the map because the formation of the surface of the ground rendered it impossible to comply with that part of the provisions of the statute

immediately; for which reason the grading of the streets was left to be established by actual survey from time to time, as it should become necessary to open such streets; that in 1828, the trustees caused a survey and profile to be made of the southerly section of *First* street, running from Grand street along the margin of the East river to the south bounds of the village; and caused such survey and profile to be filed with their clerk, and caused the street to be graded and levelled in conformity thereto; and setting out the certiorari, &c. in the supreme court upon which these proceedings of the trustees were confirmed; (*See Coles* v. *The Trustees of Williamsburgh,* 10 *Wend. Rep.* 659;) and that the trustees subsequently caused similar sections of second and fourth streets and several other streets intersecting the same to be laid out, and surveys and maps and profiles thereof to be made and filed in the same manner, and caused the said streets, or certain sections thereof, to be levelled in conformity with such surveys; and that one of them, South Second street, had been paved and the assessment therefor had been made and collected or paid. The complainants then charged or alleged, in their bill, that one of them owned large and valuable tracts of land on the southerly section of First street, and on the other streets which had been so graded and levelled; and that others of the complainants respectively owned lands on such other streets; some of which lands had been purchased since the regulation and surveys of the said streets, and upon the faith thereof as the permanent plan for the grading and levelling of those streets; and that no change or alteration in the gradation of such streets could now be made without serious detriment to the rights and interests of the complainants in relation to their lands; but that the trustees of the village, upon the petition of the majority of the land owners on the south easterly section of First street, in June, 1836, passed an ordinance or resolution to alter the grade of that street as thus permanently settled, and to re-regulate and pave the street; and that they had employed the defendant Moore to cut down and alter the grade of the street about six feet; which, if permitted, would require a corres-

ponding alteration of the grading of the other streets, upon which some of the complainants' property was situate, and which intersect the south section of First street; and that the re-grading of First street, if carried into effect in the manner contemplated in the ordinance, would materially impair and injure the value of the complainants' property. They therefore asked for an injunction to restrain the defendants from proceeding to alter the grade of the street as theretofore established, and from digging down the street or removing the earth therefrom. An order to show cause why an injunction should not issue having been granted, the defendants introduced affidavits showing that the alteration of the grades of the streets was necessary for the benefit of the village, and more particularly for the convenient use of the waters of the East river for commercial purposes; whereupon the vice chancellor made an order denying the application for an injunction.

*J. H. Lee & D. B. Ogden,* for complainants.

*Ebenezer Griffin,* for the defendants.

THE CHANCELLOR. If the trustees of the village of Williamsburgh have the power, under their act of incorporation, to alter the grade of the streets of the village after it has been once regulated and established by them as required by the 19th section of that act, the case before me is not one in which it would be proper for this court to interfere; as there is no pretence that the trustees are acting in bad faith, and without reference to what they honestly believe to be for the interest of the inhabitants of the village. On the other hand, however, if they have no such power as they have assumed to exercise by the ordinance in question, then this appears to be a very proper case for the allowance of an injunction, to restrain an illegal proceeding by them to dig down and alter the grading of the street as originally established, which, as alleged in the bill, will be a material injury to the value of the property of these complainants. The assessments upon their lots for the expen-

ses of the proceedings to alter the gradations of the streets, although they might be so far void as not to affect their legal title to the land, would of themselves be a cloud upon that title which must necessarily diminish the value if it did not entirely prevent the sale of such lands as village building lots; as a prudent man would not be likely to buy a city or village lot for the purpose of building thereon, and pay the full value of the lot, while a cloud like this was hanging over the title, which might thereafter subject him to litigation if not to actual loss of the property. And as this court sometimes exercises its jurisdiction for the purpose of removing a cloud from the complainant's title to real estate, it may also, in a proper case, interpose its authority to prevent the illegal act from which such a cloud must necessarily arise. (*Petit* v. *Shepherd*, 5 *Paige's Rep.* 493.) The decision of the present case, therefore, depends upon the question whether the trustees of Williamsburgh have the right, as claimed by them, to alter the regulation and grading of their streets after it has been once adopted and established. For it is judicially settled by the decision of the supreme court, in reference to this particular street, that the grade thereof had been legally established by the trustees, before the institution of the proceedings now in question to re-regulate the street and to grade the same anew.

The object of the legislature, by the 19th section of the statute, appears to have been to have a permanent plan of the village made and adopted by the trustees, not only as to the location of the streets, roads and alleys, but also as to the regulation or gradations thereof; to which plan all subsequent proceedings should conform. Hence, it was made the duty of the trustees to cause a survey and map of the village to be made and filed, as soon as conveniently might be, exhibiting the streets, roads and alleys to be permanently laid out, and also exhibiting all the gradations and regulations which would be required in such roads, alleys and streets. And it appears to me that the making of this survey and map of the locations and gradations of the streets, roads, &c. of the village was not only a useless proceeding,

1837.

Oakley
v.
Trustees of
Williams-
burgh.

but was also calculated to deceive those who might there-after become the owners of village property, if it was not intended to confine the proceedings of the trustees to the opening and inproving the streets, &c. according to the locations and gradations as thus established. And I think there could not have existed a reasonable doubt as to the intention of the legislature thus to restrict the power of the trustees if it had not been for the introduction of the word *altering* into the subsequent sections of the act.

The 21st section of the act provides that it shall be lawful for the trustees to order and direct the pitching, regulating and paving the streets according to the map and survey, and the *altering*, amending and cleansing any street, vault, sink, &c.; and to cause estimates of the expense to be made, assessed and collected, &c. And the 24th section contains a similar power as to the widening and altering streets and highways already laid out, and as to the laying out and making other roads and streets, conformable to the map, as the trustees might think necessary and convenient; with a provision for compensating the owners of lands for the property thus taken for new streets, or the alteration of the old ones, and for raising the amount by assessment upon the owners of lands benefitted thereby. It is under the power af altering streets, as given in the 21st and 24th sections, that the counsel for the defendants claim the right to change the location or to alter the grade of streets which have been located or graded, in conformity to the general map and plan of improvements, subsequent to the act of incorporation. In this I think the trustees have entirely mistaken the meaning of the legislature in relation to the alterations which they were, by these sections, authorized to make. At the time when this act of incorporation was passed there were roads or streets already existing within the chartered limits of the village. And as a general plan of improvements was to be made and adopted by the trustees, both as to the location and the grade of every street, alley and road in the village, it was anticipated by the legislature that it might become necessary for the trustess to alter the grades and locations of the old roads and

1837.

Oakley
v.
Trustees of
Williams-
burgh.

streets, so as to render them conformable to the general and permanent plan of the village, as well as to pitch, regulate, pave and open the new streets, according to the map and survey. Hence the necessity of providing for the alteration of streets in the 21st section, which relates to the pitching, regulating and paving, as well as in the subsequent section regulating the manner of altering and widening old streets and opening new ones. The word *altering*, therefore, in both of these sections, related to the old streets and roads which existed at the time of passing the act of incorporation, and not to the new streets which might thereafter be laid out, opened or graded in conformity to the map and survey, and to the grade as first adopted by the trustees. And these trustees have no power or authority to change or alter the grade or location of any such new street after it has been once established by them, in conformity to the map and survey and gradation first established, or of any of the old streets after they have been made to conform to such general plan. The defendants have no legal power therefore to alter the grade of this southerly section of First-street, or of the adjacent streets which have been thus regulated and graded.

The inhabitants of this village, however, are not without remedy if the interest of the public requires a correction of any mistake which the trustees may have made either in laying out streets or in fixing the gradations thereof. For it is perfectly competent for the legislative power which directed a general plan of the village to be adopted and adhered to by the trustees, to authorize them to make such alterations in the plan as may be found necessary either in regard to this particular street or as to the streets of the village generally. And if the legislature shall think proper to authorize such alterations, it will be for the same power to prescribe the proper mode of ascertaining who are injured by such alterations, and of compensating them for such injury.

There is no ground for the objection in this case, that the complainants have waived their rights by delay, or by any acquiescence in the proceedings of the trustees. They

protested against the alteration of the grade of the street the first opportunity they had for that purpose ; and they followed it up with an application to this court for redress when they found that the defendants were determined to proceed notwithstanding such protest.

The order of the vice chancellor must therefore be reversed, with costs, and an injunction must be granted to restrain the defendants from proceeding with the proposed alteration of the former gradation of the street as originally established by the trustees.