## LAWRENCE *vs.* THE MAYOR, &c. of NEW-YORK.

After a street in the city of New-York has been regularly laid out, and opened, of a specified width, the common council has no power to diminish its width, by authorizing the owners of property fronting upon the street to enclose a certain number of feet on each side, for court yards.

And where such common council had passed an ordinance allowing the owners of property on a street 100 feet wide, to enclose 15 feet on each side for court yards; *Held* that a person owning lots upon the street, who had been induced to purchase the same in consequence of the width of the street, and which lots would be reduced in value by diminishing such width, was entitled to an injunction to restrain the corporation, and its agents, from thus appropriating any part of the street, or diminishing its width as the same was laid out.

Lawrence *v.* The Mayor, &c. of New-York.

Where land is conveyed to a corporation *in trust*, to be kept as a *public street*, a person possessing the character of a *cestui que trust* by owning property on such street, may enforce the execution of the trust; and he has a right to an injunction to restrain such corporation from a violation thereof.

In Equity. Motion to dissolve an injunction. The plaintiff in this suit was the owner of property upon Fourteenth-street, in the city of New-York; and filed his bill on behalf of himself and others who might choose to come in, to restrain the corporation of that city, and their agents, from diminishing the width of the said street. The bill alleged that by an act of the legislature passed in 1807, certain commissioners were appointed for the purpose of laying out streets, &c. in the city of New-York. Certain duties were prescribed to the said commissioners, and their acts in respect to the laying out of the streets were to be deemed final and conclusive. Among the streets thus laid out by the commissioners, in pursuance of this act, was Fourteenth-street; the width of which was designated by the commissioners to be 100 feet. In the year 1813, another act was passed, authorizing the common council, whenever it should deem the opening of a street, to be designated by the commissioners theretofore appointed, necessary, to apply to the supreme court for the appointment of commissioners, who should make all necessary surveys, &c. and make a just and equitable assessment of the loss and damage consequent upon the opening of said street, and also of the benefit which it might occasion. On the confirmation of the report of the said commissioners by the supreme court, the common council were to become seised in fee of all such lands, tenements and hereditaments as might be required for the purpose of opening the said street; *in trust,* nevertheless, that the same should be appropriated and kept open as a public street, forever. In the year 1828, Fourteenth-street was opened from the Bowery to the East river, of the width of 100 feet; and the necessary assessments were made. The plaintiff stated that he had been the owner of property in this part of Fourteenth-street for a period of eighteen years; that his grantor was duly assessed for the opening of said street; that the plaintiff was induced to purchase in consequence of

the width of the street. The bill then alleged that the common council, in violation of their trust, had passed an ordinance allowing owners of property fronting upon Fourteenth-street to enclose 15 feet on each side for court yards. That said ordinance was in direct violation of the trust upon which the corporation holds the property, and would be highly inequitable and injurious to those who had purchased property in the faith that such trust would be observed.

The defendants, by their answer, admitted the material allegations in the bill, but contended that under the various acts of the legislature in reference to the opening of streets, &c. in the city of New-York, the corporation have a right to pass ordinances regulating the width of streets. That the ordinance in reference to Fourteenth-street does not operate as an injury or inconvenience to the plaintiff; sufficient width being left to the street for all practical purposes. The answer also denied the jurisdiction of this court, and insisted that the plaintiff has an adequate remedy at law. The defendants also insisted that the owners and occupants of land adjoining Fourteenth-street should have been made parties.

*J. S. Lawrence*, for the plaintiff.

*Willis Hall*, for the defendants.

EDWARDS, J. The plaintiff in this suit claims relief on two grounds. First, That he is entitled to an easement in a street known as Fourteenth-street in the city of New-York; the same having been laid out and opened, and dedicated to the public as a street one hundred feet wide. Second, That a tract of land one hundred feet wide, and known as Fourteenth-street, has been conveyed to the mayor, aldermen, &c. of the city of New-York, in trust, to be "appropriated and kept open for, or as a part of, a public street, avenue, square, or place forever;" and that the plaintiff, as one of the *cestuis que trust*, has a right to restrain the trustees from a violation of their trust. The bill is filed on behalf of the plaintiff and such persons as

shall come in, and contribute to the expenses of the suit, and who can, or might, claim that the street should be appropriated and kept open forever, as a public street.

The facts that the street was laid out by the commissioners appointed under the act of 1807, as a street one hundred feet wide, and was afterwards opened by the mayor, aldermen, &c. of the city of New-York, under the act of 1813, as a street of the same width, and that the plaintiff is the owner of an adjoining lot, are admitted. It follows, of course, that the plaintiff is entitled to an easement in the street, and in every part of it. The question then arises whether this court has the power to restrain the defendants from restricting the plaintiff in the enjoyment of such easement. The court of chancery, in this state, and in England, has often interfered in similar cases, not only to restrain individuals, but corporations. (*Hills* v. *Miller*, 3 *Paige*, 254. *Trustees of Watertown* v. *Cowen*, 4 *Id.* 510. *Corning* v. *Lowerre*, 6 *John. Ch.* 439. *Oakley* v. *The Trustees of Williamsburg*, 6 *Paige*, 262. 2 *Mylne & Craig*, 123.) Indeed, the case of *Oakley* v. *The Trustees of Williamsburg* is, in most respects, strictly analogous to this.

But the ground on which the plaintiff chiefly relies is, that the land which was laid out, and opened, as Fourteenth-street, was conveyed to the defendants *in trust*, to *be kept open* as a *public street*, and that he, as one of the *cestuis que trust*, is entitled to restrain the defendants from a violation of their trust. It appears from the pleadings that the grantor of the plaintiff, who was the owner of the lot adjoining Fourteenth-street now owned by the plaintiff, was assessed to the amount of seven hundred dollars and upwards, for the estimated benefit to this and other adjoining property, arising from the opening of the street. This sum was paid, and was, at the time, considered as the amount of the enhanced value to his property, caused by the opening of a street one hundred feet wide. The amount of the purchase money paid by the plaintiff in this suit, it may fairly be presumed, was increased to the same extent, owing to the supposed improved value of the property ; and he alleges in his bill that the value of his property will be reduced by di-

minishing the width of the street. He, through his grantor, has contributed to the creation of the trust, to the extent of the supposed benefit to his property, and is, undoubtedly, entitled, as a *cestui que trust* to enfore its execution; and the fact that the defendants are a corporation does not impair or change the rights of the plaintiff. (*Bailey* v. *Mayor, &c. of New-York*, 3 *Hill*, 531, 541. *Attorney General* v. *Mayor of Liverpool*, 1 *Myl. & Craig*, 171. *Frowin* v. *Lewis*, 4 *Id*. 249, 255.) But it is contended, on the part of the defendants, that notwithstanding such right of the plaintiff, the defendants would not be guilty of a violation of their trust, by permitting fifteen feet in width, on each side of the street, to be enclosed by the adjoining owners as a court yard; inasmuch as there would still be enough of the street remaining open to give the plaintiff a sufficient right of way. The answer to this is, that no such right to diminish the width of the street has been reserved to the trustees. On the contrary, they are by the very terms of the trust, to keep the street as laid out, that is, a street one hundred feet wide, *open as a street or public place forever.* And they have no more right to discontinue a part of it as a public street, than they have to discontinue the whole. Neither have they any more right to enclose, or to authorize the enclosure of any part of the street, for a limited period, or for a period to be terminated at the will of the trustees, than they have to do so for an indefinite period. And they have no more right to enclose, or authorize the enclosure of, a part of the street for a court yard, than they have for building, or other purposes. But it is contended on the part of the defendants, that, although it may be true that they have no power to authorize the enclosure of a part of the street, under their powers as trustees, yet, that they can do so by virtue of the legislative power vested in them by their charter of incorporation. The power which is thus conferred upon them, authorizes them "to frame, constitute, make, ordain, and establish such laws, statutes, rights, ordinances, and constitutions, which to them, or the greater part of them, shall seem to be good, useful, or necessary for the good rule and government of the body corpo-

rate." (*Kent's Charter*, 54.) These are the ordinary legislative powers which are usually given to municipal corporations of a similar character. But this can give them no power to violate the admitted rights of individuals, or their own legal duties as trustees. And it is no sufficient answer to say that in doing so "it seemed to be good, useful and necessary for the good rule and government of the body corporate."

It was also contended on the part of the defendants, that they could not be restrained from passing an ordinance; that being a mere declaration of an intention, and not an act. But the injunction does not restrain the defendants from passing an ordinance. It restrains them, and their agents, from appropriating any part of Fourteenth-street as court-yards, and from otherwise diminishing the width of the street, as the same was laid out and opened. It appears from the pleadings, that at the time when the injunction was issued, an ordinance had been passed by both boards of the common council, though it had not then received the sanction of the mayor; and that by virtue of the city charter, the same would become absolute in ten days unless vetoed by the mayor, although not signed or directly approved by him. The mayor neither vetoed nor signed it; and by operation of law it became a complete ordinance in ten days after its passage by the two boards. The ordinance, by its terms, gave permission to the proprietors of lots on Fourteenth-street to enclose a court yard of fifteen feet width on each side of the street; but it provided that, in case the said court yard should thereafter, in the opinion of the common council, be required for a street, the same should be thrown open for a street. It was contended on the part of the defendants, that inasmuch as they did not intend themselves to enclose any part of the street, but merely gave permission to others to do so, there was nothing to which the injunction could apply. It certainly would not be a sufficient answer to a complaint of a threatened violation by a trustee, of the rights of his *cestui que trust*, to say that the trustee did not intend to violate them himself, but intended only to give permission to others to do so, and to confer upon them authority to do the act which would constitute a

violation of the rights of the *cestui que trust*, and of the duties of the trustee.   The bill alleges that the defendants are about to violate their trust by enclosing a part of Fourteenth-street, and that the two boards of the common council have passed a resolution giving permission to the proprietors of adjoining lots to enclose a part of the street, and prays for an injunction restraining the defendants, and their agents, from doing so.   The defendants do not deny that they have given the permission, and that the permission will be acted upon unless they revoke it.   But they contend that the continuance of such permission, and the allowing the proprietors of the adjoining lots to act on that permission, will not be an appropriation of the street by the corporation; inasmuch as the proprietors will perform the labor of making the enclosures themselves.   The answer to this is, that they will act by virtue of the authority conferred upon them by the defendants; and it will be by virtue of the act of the defendants, that is, the granting of permission by them, that the appropriation will be made.   The case is analogous to that of a tenant in possession, who has given permission to a third person to commit waste, by cutting down timber upon the premises.   It would be no excuse to say that the tenant did not intend to cut down the timber himself, but that he had only given permission to another person to do so, which permission, although revocable at his pleasure, he did not intend to revoke.

It was further contended on the part of the defendants, that the bill in this cause should have been filed against the proprietors of the adjoining lots.   The relief sought is against the trustees.   The bill alleges the rights of the *cestui que trust*, and also alleges that his rights are about to be violated by the acts of the trustees.   And it would certainly be inequitable to compel the plaintiff to seek his relief against the proprietors of all the adjoining lots, in a case in which all the evils apprehended would be the result of the authority and permission given by the trustees, and in a case too in which their duty required them to protect the rights of the *cestui que trust*.   The trustees are the responsible parties.   The injunction restrains them, and their agents.   And it is through them, and their agency, that

the contemplated injury is to be done. They are, according to every reasonable acceptation of the term, about to become the authors of the mischief which the court are called upon to pre-vent. It is to them that the injunction should be addressed.

The motion to dissolve the injunction must be denied.

