JOHN J. SANDERS *v.* JAMES EVERETT.

## October Term, 1877.

CLOUD UPON TITLE—BILL TO PREVENT—RIGHTS OF A CREDITOR.—As this court has the jurisdiction to remove a cloud from the complainant's title to land, so it may, in a proper case, interpose its authority to prevent an act which would create the cloud; but this should be done as against a judgment-creditor, seeking to exhaust his remedy by execution, with great caution, if at all.

SAME—TITLE BY STATUTE OF LIMITATIONS—DEMURRER.—Complainant bought land by parol contract, immediately taking possession and inclosing it, and afterwards, from time to time, took receipts for payments, which receipts were signed by the vendor, specified the land by a designation which identified it, and mentioned the vendee as the person from whom the payment was received, and that the payment was for the land sold by the person receiving to the person paying, and the complainant remained in possession for nine years, when he took a formal deed, but, before the deed was registered, the defendant levied a justice's execution against the vendor on the land, whereupon this bill was filed to enjoin the sale. *Held*, that a demurrer would not lie to the bill, based on the ground that the complainant had failed to show that, at the date of the levy, he had acquired any title to the land by deed duly registered, or by the Statute of Limitations.

*W. G. Brien*, for complainant.
*A. G. Merritt*, for defendant.

THE CHANCELLOR:—On demurrer. In the year 1858, the complainant bought all except twenty-five acres of a tract of land in this county, known for forty years as the "Hagan place," and went into possession. Being thus in possession, in the year 1867 he bought from J. H. Austin the remaining twenty-five acres for $1,025, and immediately took possession and inclosed them, and has remained in actual occupancy thereof, claiming them as his own, ever since. He paid the purchase-money by instalments, taking receipts for each payment, these receipts constituting his only written evidence of right. The first of these receipts bears date April 23, 1867, and reads thus: " Received of John J. Sanders three hundred and eighty dollars, in part

payment for land, it being part of the Hagan tract of land.''
Another receipt, dated December 3, 1868, says : '' Received
of John J. Sanders one hundred dollars, on land I sold him,
it being part of the Hagan tract.'' A third receipt is thus
worded : '' Received, Nashville, March 10, 1868, of John
J. Sanders, two hundred dollars, on land bought of me,
known as the Hagan land.'' Each of these receipts is
signed by J. H. Austin. On September 28, 1872, the com-
plainant made his last payment in full of the purchase-
money for said land. On August 21, 1876, Austin executed
to complainant a formal deed to the land, which was duly
proved and registered on October 18, 1876. On August
23, 1876, the defendant, James Everett, recovered a judg-
ment before a justice of the peace against J. H. Austin,
for $145 and costs, and on September 1, 1876, an execution
issued thereon, and was levied on said twenty-five acres as
the property of Austin. The execution thus levied was,
together with the papers in the cause before the justice,
returned to the Circuit Court, and at the May term, 1877,
of that court, the land was condemned, and ordered to be
sold. This bill was filed on August 21, 1877, to enjoin the
execution of the order of sale thus obtained, and an injunc-
tion was granted.

The defendant has demurred, assigning for cause of de-
murrer, that the complainant had failed to show that, at
the date of the levy of execution, he had acquired any
title to the land, by virtue of a deed recorded as required
by law, or by the Statute of Limitations.

The demurrer does not raise the question whether the
bill discloses a proper case for equitable interference, at
any rate before the defendant has actually acquired, by exe-
cution-sale, the interest of the debtor in the land which he
is seeking to subject. This is often a question of grave
difficulty. For, the very object of the acts complained of
may be to enable the creditor to acquire the title of his
judgment-debtor. The court has, undoubtedly, the juris-

diction to remove a cloud from the complainant's title to real estate; so it may, in a proper case, interpose its authority to prevent the act from which such a cloud would necessarily arise. *Pettit* v. *Shepherd*, 5 Paige, 502; *Oakley* v. *Trustees of Williamsburgh*, 6 Paige, 265; High on Inj., secs. 147, 269. And where the title which the defendant is seeking to acquire is apparently a good title as against the complainant, and only defective, if it be defective, by reason of facts *dehors* the registered chain of title, the jurisdiction has been considered clear. *Moore* v. *Cord*, 14 Wis. 213; *Gamble* v. *Loop*, 14 Wis. 465. But, if the interposition of equity, by its injunctive process, could work injury to a judgment-creditor in the enforcement of his rights against the interest of his debtor in the land, and would be equally as efficacious in the protection of the complainant after that right had been acquired as before, it is obvious that the creditor ought not to be interfered with prematurely. *Freeman* v. *Elmendorf*, 3 Halst. Ch. 475; affirmed on appeal, *id*. 655. Accordingly, in *Woodfolk* v. *Swenson*, in this court, although Merritt, as special chancellor, refused to dissolve the injunction upon the face of the bill, yet when it appeared, by the defendant's answer, that he was seeking to reach the debtor's interest, whatever it might be, and that the injunction would prejudice his rights as between him and other creditors, and was not essential to the protection of the complainant, the injunction was dissolved, and this action was sustained by the Supreme Court. And, generally, it seems to me, a judgment-creditor should be allowed to exhaust his remedy against his debtor without hindrance, a third party having precisely the same rights afterwards as before.

In the case before us, it does not appear to be of any importance to the creditor whether the controversy be settled now, or after he shall have proceeded to sell. The point is, does the bill show that, at the date of the defendant's levy, the complainant had acquired any title to the land by virtue

of a registered instrument, or the Statute of Limitations? Under the Code, sec. 2075, an unregistered instrument is, by itself, of no effect against existing or subsequent creditors of the grantor. *Kinsey* v. *McDearmon*, 5 Coldw. 392. But the instrument itself is good between the parties, whether it be a deed (*Green* v. *Goodall*, 1 Coldw. 405; *Self* v. *Haun*, Com. Rep. of January 24, 1874), a title-bond (*Ocoee Bank* v. *Nelson*, 1 Coldw. 186), or a mere informal writing. *Kinsey* v. *McDearmon*, 5 Coldw. 392; Code, sec. 2072. In the last of these cases, the instrument which, although unregistered, was held sufficient to give a right superior to the claims of creditors of the maker after his death, who had acquired no lien in his lifetime, was an informal writing, the operative part of which was thus worded: "I agree that said A. shall have a lien to hold himself [harmless] as security as aforesaid, in the tract of 438 acres sold by him to me, and called the 'Thomas place,' a title-bond to which I hold." The receipts set out in the bill are fully as explicit. One of them receives the money "on land I sold him, it being part of the Hagan tract." Another is, "on land bought of me, known as the Hagan land." And the bill avers that the only part of the Hagan land owned by Austin consisted of the twenty-five acres thus bought and sold. As an executory agreement, either one of these receipts might be insufficient to sustain a bill for specific performance, because of its failure to show sufficiently the terms of contract. *Sheid* v. *Stamps*, 2 Sneed, 173. But, after the agreement has been executed by the full payment of the consideration, the receipts would be sufficient, because they show an actual sale of a specific tract of land by the person who signs the instruments to a person named. *Whitby* v. *Whitby*, 4 Sneed, 473; *Cohen* v. *Woollard*, 2 Tenn. Ch. 686. Words of inheritance being no longer necessary to carry the fee, an instrument containing these particulars might be, if so intended, "an assurance of title purporting to convey an estate in fee,"

and vest an indefeasible title under the Code, sec. 2763. And this, whether it was registered or not. *Stewart* v. *Harris*, 2 Swan, 656. At any rate, the receipts may be considered as " articles of sale or informal muniments," which will be sufficient to protect the possession to the limits of the land claimed under the Code, sec. 2765. *Brown* v. *Johnson*, 1 Humph. 261, 264. And, even in a parol sale, actual inclosure would protect the possession under the same section (*Wallace* v. *Hannum*, 1 Humph. 443), and when a deed is afterwards made, the vendee may couple his possession before and after the deed together, so as to gain the protection of the statute. *Valentine* v. *Cooley*, Meigs, 613. Where a creditor seeks to subject land of the debtor adversely held, if the debtor be barred, the creditor will be barred also. *Baker* v. *Morgan*, 5 Sneed, 521.

The demurrer is, therefore, not well taken, and must be overruled.