PEOPLE ex rel. MARK CROSS CO. v. AHEARN, President of Borough of Manhattan, et al.

(Supreme Court, Appellate Division, First Department.  March 13, 1908.)

1. NUISANCES—ABATEMENT—REMEDY IN EQUITY.
   Ordinarily there is an advantage in equity, where the owner or occupant of abutting premises may be required to abate a nuisance or remove an obstruction at his own expense, and take on himself the risk of injury to a building from which the unauthorized structure is to be severed or removed, and where the right is not entirely clear, both the public and private individuals should be left to that remedy.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, §§ 176, 189.]

2. MUNICIPAL CORPORATIONS—STREETS—OBSTRUCTIONS—AREAWAYS.
   A property owner may, under legislative authority, be authorized, subject to the right of revocation, to construct and maintain within a street an areaway within the stoop lines for the purposes of light or access to the cellar or basement of a building, such being a proper use of the street.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1444.]

3. EVIDENCE—JUDICIAL NOTICE—MUNICIPAL ORDINANCES.
   Judicial notice cannot be taken of city ordinances, not pleaded, governing the construction of areaways, porticos, stoops, or steps in public streets in connection with a building on abutting premises.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 42.]

4. MUNICIPAL CORPORATIONS—NUISANCES—STRUCTURES IN STREET—RIGHT TO
    OBJECT—ESTOPPEL.
        Where structures in a street, appurtenant to a building, were unlawful,
    a lessee of adjoining premises, who had obtained his lease, but had not
    taken possession prior to the erection of the structures, was not estopped
    by his mere silence to sue to compel their removal.

5. LIMITATION OF ACTIONS—INJURY TO EASEMENTS—LIMITATIONS APPLICABLE.
        Where structures in a street appurtenant to abutting property were un-
    lawful, and constituted an interference with relator's easements as lessee
    of adjoining property, relator would not be barred by limitations from
    suing to compel the removal of such structures until after the lapse of
    20 years.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Ac-
    tions, § 143.]

6. MANDAMUS—NUISANCE—REMOVAL—PROCEEDING BY INDIVIDUAL—SPECIAL IN-
    JURY.
        It is not necessary that relator should show a special injury to entitle
    him to proceed by mandamus to compel public officials to remove unlawful
    incumbrances, obstructions, and nuisances from the public streets.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§
    146, 289.]

7. MUNICIPAL CORPORATIONS — STREETS — OBSTRUCTIONS — ORDINANCES —
    CONSTRUCTION.
        A New York City ordinance of 1832 authorized the owners of lots on
    Fifth avenue, between Sixth and Twenty-Third streets, to inclose a court
    15 feet wide with an open iron railing in front of their lots on each side
    of the avenue, and also authorized the placing of a curb stone 30 feet
    from the line of the avenue on each side, provided that the courts, in the
    option of the common council, might thereafter be taken for street purpos-
    es. In 1844 such privilege was extended to lot owners on the avenue be-
    tween Twenty-Third and Forty-Second streets. *Held*, that such ordinan-
    ces did not authorize the placing of a boiler and engine with other pipes
    and machinery, in the part of the street in front of a building used for a
    restaurant on such avenue, formerly occupied as a courtyard, and the con-
    struction of a platform above the same, a foot to 18 inches above the
    sidewalk, with a wall, iron railing, electric lamps, and awning supports.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corpo-
    rations, § 1444.]

8. MANDAMUS—CITY OFFICERS—OBSTRUCTIONS IN STREETS—REMOVAL—SUSPEN-
    SION OF WRIT.
        Where plans for certain obstructions in a street, adjacent to abutting
    property, were filed with and approved by the city's building department,
    and the public officials, having jurisdiction, knowingly acquiesced in the
    construction and maintenance of the structures in the street, a writ of
    mandamus to compel the removal of such obstructions by the city would
    be suspended for a reasonable time to enable the owners to remove the
    obstructions voluntarily.

Appeal from Special Term.

Mandamus by the people, on the relation of Mark Cross Company, against John P. Ahearn, as president of the borough of Manhattan, and others, to compel defendant Ahearn to remove certain structures within the line of Fifth avenue. From an order granting the writ, John B. Martin and the respondents other than Ahearn prosecute separate appeals. Modified and affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and HOUGHTON, JJ.

· Harold H. O'Connor (Nicholas A. Donnelly, on the brief), for appellant Martin.

Joseph E. Choate, Jr. (T. T. Sherman, on the brief), for appellants Warwick Emile Montgomery and others.

James A. Deering, for relator.

Theodore Connoly, for respondent John F. Ahearn, as president, etc.

LAUGHLIN, J. The relator is a domestic corporation and occupies the building known as No. 210 Fifth avenue under a lease for the term of 20 years from the 1st day of May, 1903. The premises have a frontage of 28 feet 2¹/₇ inches on the westerly side of Fifth avenue, commencing 56 feet 5¹/₇ inches south of the southerly line of West Twenty-Sixth street. The building on the premises is 12 stories in height above the basement. The petitioner is engaged in the sale of specialties in high grade leather goods and occupies the five lower floors of the building for the purpose of its business, the first and second floors being used as salesrooms, and the third, fourth, and fifth as stockrooms and offices. The floors above the fifth floor are divided and fitted up into apartments, and are sublet. There are two entrances to the building from Fifth avenue, one, at the southerly side of the front, to the salesrooms, and the other, at the northerly side, to the elevator and stairs leading to the stockrooms and apartments. Between these two entrances is a show window in which the goods of the petitioner are displayed. Fifth avenue was laid out of the width of 100 feet, pursuant to the provisions of chapter 115, of the Laws of 1807, and the city subsequently acquired title thereto for the purpose of a public street. It was thereafter opened up and used as a public highway and is still held in trust for such purposes. On the lot lying between that occupied by the petitioner and Twenty-Sixth street, known as No. 214 Fifth avenue, there has stood for many years a five-story brick building, having a frontage of about 56½ feet on the westerly side of the avenue. The easterly face of the front wall of this building is on the westerly line of Fifth avenue, as is also the face of the front wall of the building occupied by the petitioner. No permanent obstruction has been placed in the avenue in front of the building occupied by the relator. The building No. 214 Fifth avenue, situate at the southwesterly corner of the avenue and West Twenty-Sixth street, was erected in about the year 1856, and from that time until about the year 1901 it was occupied by Delmonico as a restaurant and was known as the "Delmonico Building." The appellants, other than Martin, are the owners of the building, and in or about the year 1901 they leased it to Martin, who caused certain alterations to be made and has since used it as a restaurant known as the "Café Martin." During the occupancy of the premises by Delmonico, there was a courtyard in front of the building throughout its entire width on the avenue, extending 15 feet and 7 inches into the avenue. This courtyard was inclosed by an iron railing, with an opening or gate for an entrance from Fifth avenue, and with ornamental lamp posts on the line of the railing on either side of the entrance. In the center of the courtyard there was a grass plot and iron

stands for flowers for ornamental purposes. This courtyard was apparently substantially on the level with the sidewalk. After Martin obtained a lease of the premises, he had the railing, lamp posts, and flower stands removed, and excavated the courtyard and placed a boiler or engine or other pipes and machinery used in conducting his restaurant in that part of the street formerly occupied as a courtyard, and above the machinery or appliances so placed he constructed a floor or platform extending into Fifth avenue 15 feet 7½ inches, occupying substantially the same space as that formerly occupied by the courtyard, and extending into West Twenty-Sixth street about 5 feet 8¾ inches and southerly to within about 15 feet of the southerly line of the premises, with a cement or tile floor from 1 foot to 18 inches above the sidewalk, and surrounded on the northerly end and easterly side by a stone wall 3 feet 4 inches in height, surmounted by an iron railing 1 foot 7½ inches in height, and an iron skeleton frame extending higher, supporting electric lamps and evidently for the support of an awning, all securely fastened to the wall. The former entrance to the building through the courtyard was near the southerly line, about if not precisely where it is now, but it does not appear, other than as already stated, what structure, if any, was erected in the avenue to form the entrance. There is no evidence that there was a stoop or steps or a portico within the lines of the avenue. Martin also caused to be constructed a portico about 15 feet in width, extending from the southerly line of the premises to the structure referred to as a floor or platform, and 15 feet 7½ inches into the avenue, occupying space formerly occupied by the courtyard. On the southerly side of the portico, a solid stone wall 3 feet 4 inches in height was constructed, surmounted by an ornamental iron railing. The roof of the portico is of iron and glass, and is about 18 feet above the sidewalk and is supported by iron columns resting on the exterior walls. Along the iron railing on the inside on the southerly wall of the portico and on the exterior wall around the platform, Martin caused a row of evergreen shrubbery to be placed, and he uses the platform as an extension of his restaurant in warm weather, it being substantially on a level with the floor of the restaurant and connected therewith by a window opening. During stormy weather an awning is swung over the platform, and another is dropped on the southerly line of the portico from the roof thereof to the wall.

The application is for the removal of these permanent structures which are within the lines of Fifth avenue. The appellants were not originally made parties to the proceedings. They were permitted to come in on their own motion. The respondent Ahearn interposed no objection to the granting of the writ, and on the appeal he submits a brief requesting that the order be affirmed. It appearing that the respondent Ahearn, as president of the borough of Manhattan, has "cognizance and control," among other things, "of the removal of incumbrances" from the public streets by virtue of the provisions of section 383, subd. 6, of the Greater New York Charter, Laws 1901, p. 162, c. 466, and he having raised no question concerning his authority to act in the premises without the direction of the

board of aldermen, we do not deem it our duty to inquire as to the technical meaning of the word "incumbrances" or as to whether it is, as here used, synonymous with obstructions or embraces nuisances. Nor in the circumstances do we deem it our duty to originate an inquiry as to whether a risk of liability for damages may be incurred by the public official or by the city in executing the order of the court, or whether he should be compelled to take that risk. Ordinarily, there is an advantage in equity where the owner or occupant of abutting premises may be required to abate the nuisance or remove the obstruction at his own expense and take upon himself the risk of injury to the building from which the unauthorized structure is to be severed or removed; and where the right is not entirely clear, both the city and private individuals should be left to that remedy.

It may well be that under the existing ordinances, or with the consent of the proper local authorities, and until such ordinances be repealed or such consent be revoked, the owners and occupants of the premises have the right to erect and maintain a portico or stoop or steps within the stoop line, so called, in the avenue as an entrance or approach to the building, and likewise the right, subject to revocation, to construct and maintain within the avenue an areaway within the stoop lines for the purpose of light or access to the cellar or basement of the building, for these are uses which may be properly made of a public street under legislative authority, upon the theory that the abutting owner, in the exercise of his private rights as the owner of easements for light, air, and access, not common to the public, may be permitted such privileges until such time as the necessities of the public imperatively require that they shall be withdrawn. Subdivisions 3 and 17, § 86, c. 410, pp. 23, 24, Laws 1882, known as "Consolidation Act"; subdivision 7, §§ 49, 50, Greater New York Charter, Laws 1901, pp. 27, 28, c. 466; Hoey v. Gilroy et al., 129 N. Y. 132, 29 N. E. 85; Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524; Deshong v. City of New York, 176 N. Y. 475, 68 N. E. 880; Jorgensen v. Squires et al., 144 N. Y. 280, 39 N. E. 373; Babbage v. Powers, 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398; Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, affirmed on opinion below 162 N. Y. 642, 57 N. E. 1105. The respondents did not set up the ordinances governing the construction of areaways, porticos, stoops, or steps in public streets in connection with a building upon abutting premises; and, therefore, we are not called upon to decide whether any part of this structure might have been retained as authorized by some existing ordinance with respect to the construction of porticos, stoops, or steps. If such license exists, it should have been pleaded, and the ordinance should have been set up, for we may not take judicial notice of municipal ordinances.

The learned counsel for the appellants contends that this proceeding may not be maintained by the relator for the reason that it should be deemed estopped, and does not show special damage. The facts present no element of estoppel. The relator obtained its

lease prior to the erection of these structures, but it had not taken possession thereunder. If the structures are not authorized by law they are a public nuisance, and they are also a private nuisance to anybody specially injured thereby as the relator manifestly is. The relator was not consulted with respect to the erection of these structures, and at most it observed their construction in silence. This presents no ground of estoppel. The structures, if unlawful, constitute an interference with the relator's easements, and no statute of limitations has run, for a grant could not be presumed until after the lapse of at least 20 years. Moreover, if the structures are unlawful, it is not essential to show that the relator is specially damaged, for any citizen has the right to institute a proceeding by mandamus to compel the public officials to perform their duty of removing unlawful incumbrances, obstructions, and nuisances from the public streets. People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637.

The appellants relied in opposing the motion upon a certain ordinance authorizing abutting owners to inclose part of the avenue for courtyard purposes. The remaining questions to be considered are as to whether this ordinance is valid, and if so, whether it authorized the structures sought to be removed by this proceeding. In 1832 an ordinance was adopted purporting to permit the proprietors of lots on Fifth avenue, between Sixth and Twenty-Third streets "to inclose a court 15 feet wide with an open iron railing in front of their lots on each side of the avenue, the gates of which shall hang inside, and shall likewise be permitted to place the curbstone 30 feet from the line of the avenue on each side leaving a 40-foot carriageway, and 15 feet for court and 15 feet for walks on each side, provided, however, that if the said courts should hereafter in the opinion of the common council be required for streets that the same shall be thrown open for streets." In 1844 an ordinance was adopted extending this privilege to the owners of lots on Fifth avenue between Twenty-Third street and Forty-Second street "subject to the same rules and restrictions as have been imposed upon the holders of lots on the same avenue south of Twenty-Third street and subject also to such further regulations as the common council may deem requisite hereafter." The courtyard in Fifth avenue in front of the building, prior to the occupancy by Martin, was apparently laid out and established in accordance with the authority which the common council attempted to confer upon the owners by this ordinance. The plain purpose of that ordinance was to ornament the avenue, not merely in the interests of the abutting owners, but in the interests of the public. It was within the jurisdiction of the common council to say what part of the street should be used as a carriageway, to establish the width and location of sidewalks, to provide for planting shade trees, the erection of hitching posts, stepping stones, hydrants, lamp-posts, and other structures recognized as proper to be erected in a public street. The common council, therefore, could itself have provided that the outer 15 feet on either side of the avenue should be graded and

maintained as a grass plot, with flower beds, subject to the right of the abutting owners to have reasonable access across the same to and from their premises. Instead of doing this at the expense of the city, it was provided that the abutting owners might do it, and evidently with a view to keeping the public from walking on the grass and injuring the flowers, the construction of an open iron railing by the abutting owner was deemed proper. Although the construction of the railing, in effect, excluded the public from the use of the part of the avenue thus inclosed, yet the public were permitted to enjoy the ornamentation which was designed to be uniform. A grass plot 15 feet in width on each side of the street would make the avenue very attractive for driving and promenading. The common council doubtless had power to protect such grass plots by imposing a fine for walking thereon. Until such time as it became necessary to widen the carriageway the maintenance of such grass plots was unobjectionable. If invalid, the invalidity of the ordinance must be predicated upon the erection of the fence, and a construction that it purported to authorize the construction and use of the courtyard for private purposes. If the ordinance be valid, it would afford no justification for the structures in question, which, viewed from any standpoint, were erected in the interests of the appellants as private owners and occupants of the abutting premises and to the exclusion of the public. The structures may be ornamental, but if so, the object and purpose was, and the effect is, to attract attention to the restaurant. The improvement was not made to render the avenue more attractive. There is no uniformity between those structures and others in the vicinity, and there is nothing to indicate that they were erected or are maintained in the interests of the public. In appearance and effect they constitute an appropriation of a large part of the public avenue for private purposes. They not only do not fall within the terms of the license contained in the ordinance, if it were valid, but they are unlawful structures which it was beyond the power to either the Legislature or the common council to authorize. Ackerman v. True, 175 N. Y. 353, 67 N. E. 629. It has frequently been held at Special Term that the ordinance was invalid to authorize what it purported to license, for the reason that in effect it permits abutting owners to inclose part of the public street and enjoy the same as their own private park (People ex rel. Riley v. Mayor, 59 How. Prac. 277; Ely v. Campbell, 59 How. Prac. 337; Lawrence v. Mayor, 2 Barb. 577; City of New York v. Knickerbocker Trust Co. [Sup.] 102 N. Y. Supp. 900), but inasmuch as the ordinance, if valid, would not be susceptible of a construction which would license these structures, it is unnecessary at this time to express a definite opinion with respect to the validity thereof.

It appears that plans of these structures were filed with and approved by the building department. It is manifest that the public officials having jurisdiction in the premises have knowingly acquiesced in the construction and maintenance of these structures in the avenue. It is common knowledge that somewhat similar structures have been erected and suffered to remain in the public streets.

Although the order must be affirmed, the facts warrant the court ·in withholding the writ a sufficient length of time to enable appellants to change the location of engine, boiler, or machinery, and ·to voluntarily remove the obstructions.

It follows that the order should be modified by providing that the writ shall not issue until 60 days after the entry and service of the order as modified by this court, and, as so modified, affirmed, without costs.

PATTERSON, P. J., and CLARKE and HOUGHTON, JJ., con·cur.

INGRAHAM, J. I concur in the result upon the ground that the common council has no power to permit an abutting owner to encroach upon the public street the fee of which is held by the municipality in trust for the public without express authority from the Legislature, and the Legislature has granted no such express authority as would justify the ordinance relied on to sustain this encroachment. I think such action by the common council entirely unauthorized, whatever its object. The public are entitled to the free and unrestricted use of the streets and avenues in the city of New York which have been acquired by the city and are held in trust for the public use, and which have been paid for by abutting ·owners by assessments imposed by operation of law upon the theory that the opening of the street or avenue would be a benefit to such abutting property. To authorize any one to appropriate the streets to private use would be an appropriation of property thus acquired, and in which all the abutting owners have an interest, cer·tainly would require express legislative sanction.

I see no reason that would justify the court in postponing the ·issuance of the writ until 60 days after the determination of the appeal by the Court of Appeals. The defendant has used this public property for many years without valid authority, and I think ·it is time that this unauthorized use should cease.

I am therefore in favor of affirming the order appealed from.