ELIAS WEISBERG, Respondent, *v.* RUBIN EILENBERG and MAX EILENBERG, Appellants.

First Department, May 28, 1920.

**Landlord and tenant — suit for wrongful eviction — lease not including right to maintain stand for sale of herring upon sidewalk, city of New York — public nuisance — maintenance of stand for vending herring between building and stoop line.**

In an action to recover damages for an alleged wrongful eviction it appeared that the plaintiff for some years had maintained a stand for the sale of herring occupying a space upon a sidewalk in the city of New York between the defendants' building and stoop line and that after the defendants had altered the building by converting a stairway into a narrow store of six feet frontage, they leased said store to the plaintiff by an instrument in writing which did not in terms refer to said stand and did not pass to the lessee any right to appurtenances. The defendants allowed the plaintiff to continue to use the stand after the execution of the written lease but thereafter caused said stand to be moved so that it no longer obstructed the show window on that part of the premises occupied by them. . Evidence examined, and *held*, insufficient to establish an intention that the written lease should confer upon the plaintiff the right to continue to maintain said stand upon the sidewalk and that he was not entitled to recover for a wrongful eviction.

Moreover, as the space occupied by the plaintiff's herring stand was between the established building line and the stoop line in the city of New York

over which the defendants had no control, the stand constituted a public nuisance in the absence of a license and, hence, the occupation of the plaintiff being contrary to law he is entitled to no damages by reason of his exclusion therefrom by the defendants.

Moreover, under the terms of the municipal ordinances the commissioner of licenses would have had no right to issue a license for a herring stand on said premises.

APPEAL by the defendants, Rubin Eilenberg and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of November, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 18th day of November, 1919, denying defendants' motion to dismiss the complaint made at the close of the case and for a new trial made upon the minutes.

*Abraham Brill,* for the appellants.

*Samuel Saltzman,* for the respondent.

MERRELL, J.:

The plaintiff has recovered judgment against the defendants for the sum of $240.35, from which the defendants have brought this appeal, said defendants also appealing from an order denying their motion to dismiss the complaint at the close of the entire case, and also denying defendants' motion to set aside the verdict of the jury and for a new trial upon the usual grounds.

The action was brought to recover damages for the wrongful eviction from premises claimed to have been leased by the defendants to the plaintiff. The premises in question are situate at 82 Hester street, in the borough of Manhattan, New York city. For some years prior to 1917 the plaintiff had maintained in front of said premises a stand for the sale of herring, occupying a space upon the sidewalk fifty-seven inches long by fifty inches deep as a stand for the display of his wares. About May, 1917, the defendants acquired possession of the premises in front of which plaintiff had had his herring stand through a lease from the owner thereof. Plaintiff continued to occupy the herring stand in front of the premises for about two months, when in July, 1917, the defendants,

lessees of the building, altered the same by converting a stairway on the easterly part of the Hester street frontage into a narrow six-foot store, and the remainder of the property into a larger store for defendants' own use. About twenty-one inches westerly from the dividing partition between the narrow hallway store and defendants' larger store there was an iron railing extending from the building line to the stoop line in front of the building, a distance of about fifty inches. Plaintiff's herring stand had occupied a space of about fifty-seven inches in front of the hallway and extending westerly to this iron railing, and he was permitted by the defendants to continue in such occupation until said alterations were made. The alterations having been completed, the defendants executed to the plaintiff a lease in writing of the six-foot store which they had built in what was formerly a hallway of said building. For nearly a year after the execution of said lease plaintiff not only occupied the store for the sale of delicatessen articles, but the stand space in front thereof and extending westerly to the iron railing a distance of twenty-one inches in front of the store occupied by the defendants. In May, 1918, the defendants caused the iron railing, up to which plaintiff had occupied the premises in front of the building as a herring stand, to be moved easterly and to be erected on the partition line between the store leased to the plaintiff by the defendants and the larger store occupied by said defendants. Defendants' excuse therefor was that they wished to insure a clear and unobstructed view of their store window.

It is the contention of the plaintiff, and upon which he seeks to recover damages herein, that it was understood between the parties at the time of the execution by the defendants of the written lease on June 20, 1917, that plaintiff was to have thereunder not only the store itself but the stand space in front thereof which had theretofore been occupied by him, and which extended westerly to the iron railing as then erected twenty-one inches in front of the store occupied by the defendants. The contention of the plaintiff is that said stand space as theretofore occupied by him in front of said store was appurtenant to the premises demised to him. An attempt was made on the part of counsel for the plaintiff to show by plaintiff that at the time of the execution of the

lease there was a talk and agreement on the part of the defendants that plaintiff should have under said lease the right to occupy said stand space in front of the premises as theretofore, and under objection and exception of counsel for the defendants plaintiff was asked as to whether or not there was such conversation. The plaintiff replied in the negative. Some evidence was given on the part of the plaintiff, however, that in response to a request made by another person desiring to obtain a lease of the stand space in front of said premises, one of the defendants told said applicant that he could not lease said stand space as the same was occupied by the plaintiff, and that the plaintiff paid rent therefor. The plaintiff, however, makes no claim that there was any express agreement on the part of the defendants that he might occupy under said lease said stand space in front of the store. It is plaintiff's contention that the fact that he was in the occupation of said stand space at the time of the execution of the lease, and that he was permitted by the defendants to occupy the same for nearly a year thereafter without molestation was sufficient to show an intention on the part of the parties that said space would be covered by said lease. I do not think the testimony permits of such interpretation. The lease is in writing, and by it the said landlords let unto the tenant and the said tenant held from the said landlords " all that certain store located on the easterly part of the building known as No. 82 Hester Street, Borough of Manhattan, New York City, for the term of two years and ten months from the 1st day of July, 1917, and terminating May 1st, 1920, to be used and occupied for the sale of herrings and delicatessen goods, and for no other purpose, upon the conditions and covenants following: * * *." The lease, by its express terms, covered nothing but the store itself. Nowhere in the lease does it appear that the space between the building line and the stoop line in front of said premises was demised as appurtenant thereto.

The learned trial court in charging the jury inadvertently stated that in the instrument was a provision that " the store and its appurtenances are let by the defendants to the plaintiff." No such provision was contained in the lease, and no reference to any appurtenances appears therein.

One of the defendants, with whom negotiations for the lease

First Department, May, 1920.        [Vol. 192.

were had by the plaintiff, testified that at his place of business
when the plaintiff applied for his lease, the plaintiff asked for
a lease of the store and the stand, but that the defendant
refused to lease him the stand, or to give him a permit for a
stand; that plaintiff at first refused to agree to take the store
without the stand, but finally consented to do so.   Thereupon
the parties proceeded to a lawyer's office and the lease was
prepared.   The lawyer who prepared the lease testified that
the plaintiff in his office requested of the defendants that they
lease the space in front of the store for the purpose of a stand,
but that defendants declined so to do, and that when the lease
had been prepared the plaintiff took the same away for the pur-
pose of having it read to him, and that sometime later he returned
and consented to accept the lease as it was drawn without a
permit to use the premises in front of the store as a herring stand.
The plaintiff denies the testimony of the lawyer and when on
rebuttal he was asked if at the lawyer's office there was any
talk about the stand, the plaintiff replied in the negative.
Asked further as to whether the lawyer had said to him: " By
this lease you have no right to any stand," plaintiff denied the
same.   Asked on cross-examination if at the lawyer's office
plaintiff had not stated that he wanted a stand and that defend-
ant said he could not have one, the plaintiff denied the same;
and asked if he did not go away with the lease before execution,
he admitted that he did; and asked if he did not come back
afterwards and consent to take it without a stand, the witness
replied: " I did come back to sign the lease and to give him the
security."   Questioned further as to whether there was not
one word said in Mr. Burke's office about a stand, the plaintiff
replied in the negative, and pressed as to whether he was
positive of that, he answered: " By the lawyer's office nothing
at all."   The plaintiff, however, failed, I think, to sufficiently
deny the testimony of the defendant that before going to the
lawyer's office to have the lease prepared, he had been refused
by defendant a lease of the stand space in front of the premises.
In this connection it will be recalled that in answer to questions
of his own counsel, plaintiff had denied that the defendant had
said to him that he would be permitted to keep a herring stand
at the premises at the time of the execution of the lease.   It
would, therefore, seem entirely clear that the evidence presented

upon the trial was such as to negative any intention on the part of the defendants to lease to the plaintiff any part of the space in front of the premises occupied by him as a herring stand, and that, therefore, the moving of the railing in question did not constitute his eviction therefrom.

However that may be, I think a complete answer to any right of recovery by the plaintiff is found in the fact that the space occupied by said herring stand between the building line and the stoop line was under numerous decisions of the courts a part of the sidewalk over which the defendants had no control and which they were powerless to lease to the plaintiff. The law is well settled that any encroachment upon the space between the building and stoop line in front of any building creates a public nuisance, and that the board of aldermen or other local authorities have no control over said space, and are powerless to permit an invasion thereof for private use. Said space occupied by the stand in question was the property of the People of the State of New York, the fee being held by the city of New York in trust for the public. The public, under the decisions, are entitled to the free and unrestricted use of all streets in the city, including sidewalks. The city's ownership of the fee of the land in question was impressed with a trust to keep the same open and for use as a public street for the benefit of the public generally. The herring stand maintained by the plaintiff was an encroachment upon a public highway and constituted a public nuisance. (*Ackerman* v. *True,* 175 N. Y. 353; *City of New York* v. *Rice,* 198 id. 124; *People ex rel. Cross Co.* v. *Ahearn,* 124 App. Div. 840.)

The ordinances of the city of New York expressly prohibit the erection or maintenance of stands in front of the building line of any building in the city, except for the sale of newspapers, periodicals, fruits, soda water, cigars, cigarettes, tobacco, candies, and confectionery articles, and with the consent of the owner of the premises therefor. By section 149 of article 13 of chapter 23 of the Code of Ordinances, adopted by the board of aldermen of the city of New York, it is provided as follows:

" 1. General provisions. No persons shall have or use any bootblack stand outside of any building, and there shall be no

booth or stand erected or maintained within the stoop lines of any building, or under the stairs of the elevated railroad stations, without first procuring a license therefor, as hereinafter provided.

" 2. Licenses. Stands within stoop lines may be permitted and licensed, with the consent of the owner of the abutting premises, for the sale of newspapers, periodicals, fruits, soda water, cigars, cigarettes, tobacco, candies, confectionery articles and the blacking of boots, but such licenses for the sale of soda water, cigars, cigarettes, tobacco, candies and confectionery articles shall be limited to stand licenses and locations thereof in effect on May 18, 1916. * * *."

No claim is made and, indeed, it distinctly appears from the evidence that no permit or license had been obtained or was ever held by the plaintiff to maintain his herring stand upon the premises in question. Under the ordinance above quoted the commissioner of licenses had no right to issue a license for a herring stand on said premises, and there was no evidence showing that plaintiff's stand was duly licensed and located on May 18, 1916. The stand was at all times in direct violation of law. Therefore, the alleged lease of the premises which plaintiff claims to have held and which he asserts included the stand space in front of the store even though it had been made, was in contravention of the aforesaid city ordinance, and he obtained no rights thereunder. This being so, and he having no right to the premises from which he claims to have been evicted, and his occupation thereof being contrary to law, he is entitled to no damages by reason of being excluded therefrom by the defendants.

I, therefore, recommend that the judgment and orders appealed from be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.